Commonwealth ex rel. Haines v. Banmiller

*Percy S. Haines*, p. p., for relator.

*Clinton R. Weidner*, District Attorney, for Commonwealth.

SHEELY, P. J., March 13, 1958.—Petitioner, who is serving a life sentence for murder, has filed a petition

for a writ of habeas corpus, and a hearing was held at which he testified in support of his petition. At the conclusion of the hearing we informed petitioner that his petition would be dismissed but that an opinion would be filed after the notes of testimony were transcribed.

The petition appears to be a general form prepared with spaces left open to fill in the names of petitioner and the appropriate court. With the exception of the second page the allegations are most general and rambling, without any specification of facts. They could apply to any case. The second page contains a "Statement of Questions Involved" and a "History of Case". From the statements on this page it appears that petitioner contends generally that:

1. "His conviction violates the Fourteenth Amendment because of the denial before his trial of an opportunity to examine the charge, subpoena witnesses, consult counsel and prepare a defense."

2. "Petitioner was denied the right to appeal a verdict and sentence since the trial court failed, and definitely refused to provide the needed necessary documents, namely, the transcript and bills of exceptions."

3. "Petitioner was decreed guilty by a verdict of a prejudice (sic) jury and was sentenced to life imprisonment."

4. "Petitioner could not have had a fair and impartial trial because the judge was prejudice (sic) and because of the prejudice (sic) feeling of the community."

Even though petitioner alleged no facts to support these charges we determined to give him an opportunity to state all of his contentions and his facts at a hearing. To understand the contentions stated at that time it is necessary to consider briefly the background of the murder charge against him.

Because of marital difficulties petitioner and his wife separated and petitioner secured a divorce in Nevada. When he returned to Pennsylvania he was arrested on a nonsupport charge and a hearing was held before the Hon. Mark E. Garber in Cumberland County. Judge Garber held that the Nevada divorce was invalid since petitioner was not a bonafide resident of Nevada when it was granted and his wife did not enter an appearance in the divorce proceedings. An order for support of the wife was entered. Petitioner became enraged at this ruling, which he felt was unjust, and drew a revolver from his coat and shot his wife and her two attorneys, John D. Faller, Jr., Esq., and George S. Black, Esq., and then went to the side of the bench and shot Judge Garber. John D. Faller, Jr., died as the result of his injuries.

At the trial the facts were not disputed although defendant did not admit doing the actual shooting. He admitted pointing the gun but insisted that "the judge with his magic ball" or "the trigger men with the magic ball" did the shooting. He said he pointed the gun at the lawyers because they were all against him because they were all for his wife, and that he pointed the gun at Judge Garber because of the "rotten decision" the judge gave him. While petitioner was not permitted to go into the question of what occurred at the nonsupport hearing as a defense to the murder charge, he was permitted to go into detail concerning his relations with his wife and the facts of the nonsupport hearing on the questions of mitigation of penalty and his sanity. Judge Garber was confined to the hospital at the time of the trial and was not called as a witness.

At the hearing on the petition for a writ of habeas corpus petitioner complained that Judge Garber was not called to testify at the trial. Judge Garber's ab-

sence was explained and there was no demand by petitioner that he be called or that his testimony be taken. It is not incumbent upon the Commonwealth to call all eye-witnesses to a murder so long as there is no withholding of testimony for no other reason than that it would be favorable to defendant: Commonwealth v. Deitrick, 221 Pa. 7, 15 (1908) ; Commonwealth v. Zec, 262 Pa. 251, 256 (1918). Defendant was deprived of no rights by the failure of the Commonwealth to call Judge Garber as a witness.

His next complaint, and the one which he repeated throughout his testimony, was that he was not permitted to testify concerning what occurred at the non-support hearing. What occurred during this hearing was obviously irrelevant as a defense to the murder charge. It seems to be petitioner's position, both in the murder trial and in the subsequent trials for assault with intent to kill, that if Judge Garber's decision on the validity of the Nevada divorce was wrong, it was Judge Garber and not petitioner who was responsible for the shooting. If the decision in the support case was wrong, petitioner had his remedy by appeal. Under no circumstances could it justify a shooting. Actually, as we have pointed out, petitioner did testify fully as to the circumstances of the nonsupport hearing in connection with the questions of penalty and his sanity.

His next complaint was that he was not furnished with a copy of the testimony taken at the nonsupport hearing. He admits that he received a copy of the notes of testimony at the murder trial without cost as soon as it was transcribed. He was not, therefore, as he alleged in his petition, deprived of his right to appeal the murder conviction because he was not furnished with the notes of testimony. The case of Griffin v. People of the State of Illinois, 351 U. S. 12, 100 L. Ed. 891 (1955), therefore, does not apply. In this

connection it must be noted also that the notes of testimony are not a prerequisite to the right to appeal in Pennsylvania.

A defendant is entitled to a free copy of the notes of testimony only in cases tried in the court of oyer and terminer: Act of May 1, 1907, P. L. 135, 17 PS §1802. Nonsupport hearings are held in the court of quarter sessions, and defendant admits that his checks which were sent for a copy of the testimony in the nonsupport hearing were not good.

No request was made by defendant for a copy of the nonsupport testimony before the murder trial, or for the purpose of preparing for that trial. Even if he had requested it, as we have shown above, it would have been irrelevant. He testified that he asked his lawyer to get him a copy, and we are informed that the testimony was made available to counsel.

His next complaint was that he was convicted on sympathy and not on the testimony. Here, again, he complains that Judge Garber was not called as a witness and that he was not permitted to go into the facts of the nonsupport hearing.

There is no evidence of any prejudice against defendant and, on the undisputed facts of the case, defendant was clearly guilty of murder in the first degree. The only real question was whether the jury would impose the death penalty or life imprisonment. Petitioner was fortunate that they chose the latter.

In his petition petitioner alleged that he had no opportunity to examine the charge prior to the trial, but he admits that he had a hearing before the justice of the peace at which the information was read to him and that the indictment was read to him by the clerk of the courts at the time of arraignment. There is no merit in this contention.

He also alleged that he was denied the right to sub-

poena witnesses, but at the hearing he admitted that no one denied him this right. He testified that he asked his lawyer to get three character witnesses from Waynesboro and that the lawyer told him he had subpoenaed these three and eight more. Only three character witnesses appeared at the trial and two of these were not the ones he sent for, although he admits they were good witnesses. No request was made to the court to issue process to bring in the other witnesses and no motion was made for a continuance because of the absence of witnesses. There is no merit in this contention.

It was also alleged that the trial judge was prejudiced. When asked about this petitioner said: "To a certain extent I figured you was," but the only thing he could think of that indicated prejudice was that the judge would not permit him to show what happened at the nonsupport hearing.

When asked about his allegation that he could not have had a fair trial because of prejudice in the community, petitioner answered that "it was no more than hearsay, I guess". He admitted that before each juror was accepted his lawyers conferred with him and he agreed that the particular juror should or should not be accepted. There is no evidence whatever of prejudice in the community which affected defendant in any way.

Petitioner could not remember whether he told his counsel that he was very much pleased with the result of the trial, but he did admit that he was very much pleased with the result, as well he might be.

An examination of the record in this case shows that petitioner had a fair trial at which all of his rights were scrupulously protected. There is nothing in his petition or in his testimony at the hearing on the petition to show otherwise.

And now, March 13, 1958, the petition for a writ of habeas corpus is dismissed. An exception to this order is noted on behalf of petitioner.