## Commonwealth ex rel. Sprangle, Appellant, *v.* Maroney.

Submitted October 5, 1966. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Cornelius Joseph Sprangle,* appellant, in propria persona.

*Edwin J. Martin,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 4, 1967:

James Green was shot to death on December 4, 1962 in Pittsburgh. Cornelius J. Sprangle was arrested for a traffic violation in York in April 1964 and a routine check revealed that he was wanted in Pittsburgh for the murder of Green. In September 1964 Sprangle was tried by a jury on an indictment charging the murder of Green and convicted of voluntary manslaughter. At trial Sprangle admitted shooting Green, but claimed

that he did so in self-defense. This is an appeal by Sprangle from the denial without hearing of a habeas corpus petition attacking his 1964 conviction.

In the petition he presented to the court below Sprangle makes about half a dozen contentions, several of which directly or indirectly challenge the competence of his defense by court appointed counsel. We have examined the notes of testimony at the trial and believe that, under the standards laid down in *Commonwealth ex rel. LaRue v. Rundle*, 417 Pa. 383, 386-89, 207 A. 2d 829, 831-32 (1965), when viewed as a whole, the conduct of Sprangle's defense was competent. Our view is shared by the opinion of Judge SHEELY, specially presiding at trial and to whom Sprangle's habeas corpus petition was addressed.[1]

Among the other claims which Sprangle makes are: (1) the Commonwealth's failure to produce a witness named "Lois Frankart" (2) the failure of prosecution and defense counsel to disclose the bullet and type of weapon used in the shooting (3) introduction of the defendant's prior criminal record and defense counsel's advice to defendant with regard thereto. We believe that these contentions are adequately dealt with in the following excerpts from Judge SHEELY's opinion:

"The petitioner first alleges that the Commonwealth failed to produce a witness by the name of 'Lois Frankart.' There is no allegation of how Lois Frankart figured in the case or what testimony she could have given if called as a witness. Apparently the only reference to such a person at the trial was in the testimony of Frank Vetere, of the Police Homicide Squad, who testified that when he arrived at the scene after the body had been removed he got the names of certain persons including Lois or Lewis Frankart.

[1] Judge SHEELY's opinion is reported at 7 Adams County L.J. 128.

"The District Attorney is not compelled to call all witnesses whose names are given to him or even to call all eyewitnesses to murder, so long as there is no withholding of testimony for no other reason than that it would be favorable to the defendant: Commonwealth ex rel. Haines v. Banmiller, 13 Pa. D. & C. 2d 57 (1958); 393 Pa. 439 (1958); Commonwealth v. Deitrick, 221 Pa. 7, 15 (1908); Commonwealth v. Giacobbe, 341 Pa. 187, 196 (1941).

"The name of 'Lois Frankart' appeared very early in the trial, and no request for the production of the alleged witness was made by the defendant. . . .[2]

"The second allegation is that the prosecution and defense counsel failed to disclose the type of bulleit [sic] and weapon used in this case and they further failed to present and establish any ownership of the weapon. The answer to this contention is that there was no burden on the Commonwealth to prove these items. The petitioner admitted that he shot the victim and that he fired the gun twice. That was all that was required to connect the petitioner with the offense.

"The petitioner contended that the gun belonged to the victim and that he snatched it from the victim as the victim was attempting to kill him. At trial he admitted that he took the gun with him when he fled, and at the time of sentence he made an issue about the gun and told the Court that he had had the gun with him in York and that it was hidden in a locker at the Yorktowne Hotel. If all this be true, the petitioner was in a better position to give testimony concerning the gun than was the Commonwealth. . . .

"The next contention is that his own criminal record was revealed during the course of the trial and his

[2] In addition to what Judge SHEELY has written, it may be worth pointing out that the name "L. Frankart" appears on the indictment listed as a witness. This suggests that defense counsel had notice of the existence of such a witness even before trial.

counsel advised him that it was better for him to introduce it himself than to have the District Attorney introduce it. He contends that he was misled by his counsel because a defendant's criminal record cannot be introduced in a murder trial.

"The petitioner is confused as to the rights of a defendant on trial for murder. Prior to the 'Split Verdict Act' of December 1, 1959, P. L. 1621 (18 P.S. 4701), the Commonwealth, in its case in chief, was permitted to introduce evidence of the defendant's criminal record for the purpose of showing the jury the manner of man he was to aid it in fixing the penalty in the event of a verdict of guilty of murder in the first degree. Since the enactment of that statute evidence of his prior criminal record cannot be introduced in the Commonwealth's case in chief for that purpose, but can be introduced only after a verdict of murder in the first degree is returned and the jury is charged with the duty of fixing the penalty: See Commonwealth ex rel. Marino v. Myers, 419 Pa. 448, 450 (1965).

"But, where a defendant takes the witness stand in his own defense he is the same as any other witness and his credibility is in issue. The Commonwealth, therefore, may introduce evidence of his prior criminal record of conviction of felonies or of misdemeanors in the nature of crimen falsi for the purpose of affecting his credibility: Commonwealth v. Butler, 405 Pa. 36, 46 (1961); Commonwealth v. McIntyre, 417 Pa. 415, 419 (1965).

"With the prior criminal record that the petitioner in this case had counsel could be certain that the Commonwealth would introduce it in evidence if the petitioner took the witness stand to testify in his own defense. Counsel therefore had a choice of several courses of action. They could not call the petitioner as a witness and his criminal record then could not be given to the jury. But then the jury would not have had the

benefit of his explanation of what occurred, and his explanation was most important. They could have had the defendant testify without reference to his criminal record and then the Commonwealth would have introduced it. Or they could frankly admit the record as they did in this case and argue to the jury the honesty and truthfulness of the defendant in admitting his past. The choice was a matter of trial strategy and we are satisfied that the experienced and able counsel representing the petitioner acted wisely. . . ."

In his petition Sprangle also complains of his counsel's failure to introduce into evidence the prior criminal record of the prosecution's most important witness. Sprangle alleges that this witness had been convicted of fraud, forgery and cashing bad checks. Whether or not defense counsel actually knew of this alleged record, we do not believe the particular circumstances of Sprangle's trial justify the conclusion that his conviction was vitiated by reason of his counsel's failure to introduce the witness's prior record. The defense's theory of self-defense substantially relied on the credibility of the defendant's version of the events surrounding the admitted shooting by him. Defense counsel could quite properly have concluded that impeachment of the credibility of an important prosecution witness by means of a prior conviction might make the jurors look with greater suspicion on the defendant's testimony since defendant had a substantial prior record.[3] Thus, under the circumstances, if defense counsel actually knew of the prosecution witness's alleged prior record, he might properly have chosen to ignore it, and if defense counsel did not know of the alleged record, the failure to introduce it need not have seriously prejudiced the defendant.

[3] On the stand, Sprangle admitted to having served ten years for burglary, five years for robbery and about a year for assault and battery.

Sprangle also argues that the prosecutor employed impermissible tactics in securing the conviction and made statements not supported by testimony. The only specific instances of such tactics alleged in the petition in the court below were the prosecutor's statement that the defendant was "victimizing" a Mrs. Mary Jolley and other women and the prosecutor's statement that the defendant was charged with a gun violation at the time of his arrest in York. The alleged statement concerning Mrs. Jolley and other women appears nowhere in the notes of testimony, and, therefore, if made at all must have been contained in the prosecutor's argument. While we entertain some doubt as to the propriety of the alleged statement as to the victimization of "other women,"[4] we do not believe that in the circumstances of this case, Sprangle was entitled to a hearing to determine the truth of this allegation. It must be remembered that we have concluded, from an examination of the whole record, that Sprangle received a generally competent defense. This fact, coupled with the absence of any objection or other action of counsel to remedy the alleged remark, must in normal circumstances be considered a waiver of defendant's rights in the matter; and since, in our view, defense counsel's failure to attempt to remedy this sup-

[4] Defendant admitted to living in Mrs. Jolley's home for a period of several months and to being her "boyfriend." It is also clear from the record that the dispute between Green and Sprangle which led to the shooting concerned the disposition and handling of money belonging to Mrs. Jolley. Sprangle stated that he had handled this money for Mrs. Jolley in order to keep it from falling into the hands of Mrs. Jolley's daughter and the daughter's boyfriend, Green. One of the prosecution's theories throughout the case was that Sprangle had appropriated the funds to his own use. Thus we do not believe the alleged statement about victimizing Mrs. Jolley may be characterized as totally unsupported by the record. Rather it was an inference from facts, established on the record, which the prosecutor sought to have the jurors draw.

posed remark would not of itself be so extraordinary an error as to constitute incompetent representation in and of itself, we believe Sprangle must be bound by counsel's tactics in this matter, *Commonwealth ex rel. Fox v. Maroney*, 417 Pa. 308, 312-13, 207 A. 2d 810, 812-13 (1965).

Sprangle's attack on the prosecutor's "statement" about the gun violation at the time of his arrest appears to arise out of the following colloquy occurring during the prosecution's cross-examination of defendant: "Q. Now you said you didn't have a gun because you didn't have a chance to get one between June and December? A. That's correct. Q. When you were arrested you had a gun? A. I had a gun? Q. Yes. A. On my person? Q. Was there a gun involved? A. When I was arrested? Q. When you were arrested in York, Pennsylvania? A. Was I arrested with a gun? No. Q. Were you charged with using a gun? A. No. Q. No? A. Not charged with using a gun, no. Q. Were you charged with pointing firearms? A. No. Q. Was there no such charge lodged against you? A. It was claimed. Q. Claimed? A. Claimed. Q. Pointing firearms? A. Yes, sir. Q. Of course, you didn't have a gun the day this shooting took place?"

Even assuming this line of cross-examination was subject to objection, see, e.g., *Commonwealth v. Jones*, 355 Pa. 594, 50 A. 2d 342 (1947); *Commonwealth v. Arcurio*, 92 Pa. Superior Ct. 404 (1928); 113 U. Pa. L. Rev. 382, 384 (1965), we believe that defense counsels' failure to object precludes Sprangle from now raising the matter for precisely the same reasons we believe that he has waived any right to challenge his conviction on the basis of the alleged statement about victimizing other women.

The final argument for overturning his conviction asserted by Sprangle in the court below is that he was held incommunicado for a period of three days. Since

Sprangle does not suggest that this period of incarceration affected any statement by him admitted into evidence at trial, he is not entitled to post-conviction relief by virtue of the allegedly illegal incarceration, e.g., *Commonwealth ex rel. Wilkes v. Maroney,* 423 Pa. 113, 120, 222 A. 2d 856, 860 (1966).

In the papers filed by Sprangle on appeal to this Court, he raises for the first time about twenty distinct grounds for relief not presented in his petition to the court below. As we have made clear before, *Commonwealth ex rel. Banks v. Myers,* 423 Pa. 124, 128-29, 222 A. 2d 880, 882 (1966), such contentions must normally be presented to a trial court before this Court will consider them.

Order affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.