Commonwealth *v.* Kaye, Appellant.

Argued April 10, 1974. Before Watkins, P. J., Jacobs, Hoffman, Cercone, Price, Van der Voort, and Spaeth, JJ.

George E. Goldstein, with him Robert M. Rosenblum and William J. Honig, and Goldstein and Rosenblum, for appellant.

Joseph M. Stanichak, Assistant District Attorney, with him Clarence D. Neish, Assistant District Attorney, and Joseph S. Walko, District Attorney, for Commonwealth, appellee.

Opinion by Spaeth, J., February 27, 1975:

Appellant, an osteopath, was convicted by a jury on six counts of violation of the Drug, Device and Cosmetic Act,[1] and was sentenced to a total of 1½ to 3 years in prison. The charges arose out of two sales of diet pills, each sale resulting in three counts: (1) sale, outside of the regular course of his profession or duties, by a practitioner licensed by law to prescribe drugs;[2] dispensing drugs without keeping proper records;[3] and (3) dis-

---

1. Act of Sept. 26, 1961, P.L. 1664, §1, 35 P.S. §780-1 et seq.; repealed, Act of April 14, 1972, P.L. 233, No. 64, §43(a), 35 P.S. §780-143(a) (Supp. 1974-75), effective June 14, 1972.

2. Id. §4(q), 35 P.S. §780-4(q).

3. Id. §4(x), 35 P.S. §780-4(x).

pensing drugs without proper labeling and instructions as to use.[4]

The first of the two sales was on April 28, 1972, in appellant's office. Appellant sold 2,000 pills in two containers of 1,000 pills each (1,000 pills of 10 mg. amphetamine sulfate and 16.2 mg. phenobarbitol, and 1,000 pills of 10 mg. amphetamine sulfate) to two troopers of the Pennsylvania State Police dressed in civilian clothes. The troopers had been introduced to appellant by one James Presto, who had served the State police as an informer and who was present when the sale was made. The sale was a straight sale; no doctor-patient relationship was established; neither of the troopers sought any medical advice, and appellant neither examined them nor made any inquiry about their health. Each of the containers had only manufacturer's label attached. There was no label to indicate who had dispensed the pills, to whom, and on what date, or in what manner they were to be administered. The second sale was on May 9, 1972, when the two troopers, again in appellant's office, purchased 2,000 pills (10 mg. amphetamine sulfate) from appellant; this time the troopers acted on their own, without Presto's aid. Again it was a straight sale, unaccompanied by any doctor-patient relationship, and again the container was not properly labeled. There is no record, either of the sale of April 28 or the sale of May 9, in appellant's office journal of drugs dispensed.

Appellant raises four issues on this appeal, but only one of these is properly before us. Two of the issues, the propriety of the execution of the arrest and search warrants and an alleged violation of the sequestration order, were not raised in post-trial motions. A third relates to the propriety of a certain comment by the prosecutor, but the comment was neither objected to at trial nor raised in post-trial motions. Appellant is thus estopped to raise these issues on direct appeal. *Commonwealth v.*

---

4. *Id.* §4(z), 35 P.S. §780-4(z).

*Williams,* 458 Pa. 319, 326 A.2d 300 (1974) ; *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

The issue properly before us involves Presto, the informant and an eyewitness to the first sale. The facts giving rise to this issue may be stated as follows. Presto's name was brought up for the first time by appellant's attorney during the suppression hearing. At the close of the hearing the assistant district attorney stated on the record that James R. Presto of Ambridge, Beaver County, was the man who had introduced the troopers to appellant, that the Commonwealth would not call Presto as a witness at the trial, and that he was being identified so that he could be called as a witness for the defense if appellant so desired. At the trial the Commonwealth did not call Presto, but the defense did; indeed, he was the only witness called by the defense. Defense counsel asked Presto his name and address, and whether he was familiar with appellant and the events of April 28, 1972. Presto answered these questions. Defense counsel then said the following: "Do you recall a period of time prior to April 28, 1972, in which you had in your possession approximately 2,000—and before you answer this question, let me finish it completely and when I tell you to answer you can answer—approximately 2,000 amphetamine sulfate tablets in a bottle similar to the one in front of you? Before you answer, I must advise you or ask the Court to advise you that you have a right to remain silent and anything you say may be held against you because I believe that an answer elicited from this witness at this time might incriminate him, Your Honor." The court called a recess and appointed counsel to advise Presto of his rights under the fifth amendment. Presto then took the stand again, and after he was asked the same preliminary questions, the following occurred:

Q [by defense counsel] And were you subpoenaed here by the Defendant here today?

A The Defendant?

Q The defense counsel, myself, Doctor Kaye, the Public Defender's Office.

A Yes.

Q Will you tell the Court your involvement with the State Police in the matter now before the Court concerning Doctor Kaye and the six Indictments under the Dangerous Drug, Device and Cosmetic Act occurring on April 28th and May 9, 1972.

[Counsel for the witness then advised him not to answer on the ground that it might tend to incriminate him.]

A I refuse to answer the questions.

[Defense Counsel]: That is all I have.

As we understand appellant's brief, his argument is in two parts: (1) that the Commonwealth should have had to call Presto as a witness; and (2) that Presto should not have been allowed to invoke any fifth amendment privilege.[5]

With respect to the first contention: While the Commonwealth should never intentionally withhold testimony favorable to an accused, *Brady v. Maryland,* 373 U.S. 83 (1963), there is no absolute duty on the part of the Commonwealth to call every eyewitness to a crime. *Commonwealth ex rel. Sprangle v. Maroney,* 423 Pa. 589, 225 A.2d 236 (1967); *Commonwealth v. Horn,* 395 Pa. 585, 150 A.2d 872 (1959); *Commonwealth v. Palermo,* 368 Pa. 28, 81 A.2d 540 (1951). Nor is this a case in which the Commonwealth withheld the identity of the informer, thereby rendering it impossible for the defense to call him if it wished. *Compare Roviaro v. United States,* 353 U.S. 53 (1957); *Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967). Here appellant knew the informer's

---

5. Appellant also contends that it was error to allow Presto to be called to the stand "with the advance knowledge that he [was] going to exercise his Fifth Amendment right against self-incrimination . . . ," but this contention ignores the fact that it was appellant who called him.

name at the outset, and also knew that the Commonwealth had no intention of calling the informer as a witness.

Appellant's argument on the second contention is that since Presto was at all times acting as an agent of the State police, he did not have the capacity to commit criminal acts and was therefore immune from prosecution. Because he was so immune, the argument goes, he could not possibly incriminate himself, and thus he could not properly invoke any fifth amendment privilege. This argument appears to be novel; appellant has cited no authority in its support, and independent research has revealed none. Nevertheless, its validity may readily be determined by asking whether an informer may acquire immunity by acting as an agent of the police, for if not, only he can waive his fifth amendment privilege.

Generally, there must be statutory authority before a witness may acquire immunity. However, the Drug, Device and Cosmetic Act, *supra,* contains no exception for police informers.[6] The fact that Presto might have relied on police assurances that he would never be prosecuted would not bar his prosecution. Perhaps such assurances would raise an estoppel, but estoppel is not a bar to prosecution; it is at most an affirmative defense, which a defendant may invoke on due process grounds. *Cox v. Louisiana,* 379 U.S. 536 (1965) ; *Raley v. Ohio,* 360 U.S. 423 (1959). *See generally* Note, "Applying Estoppel Principles in Criminal Cases," 78 Yale L.J. 1046 (1968-69). Nor could the district attorney immunize Presto: "[I]n the absence of statutory authority providing district attorneys in the Commonwealth of Pennsylvania with the

---

6. *Compare* Nebraska R.R.S. 1943, §28-462: "Parties to whom act not applicable. The provisions of this act restricting the possession and having control of narcotic drugs shall not apply to . . . temporary incidental possession . . . by persons whose possession is for the purpose of aiding public officers in performing their official duties." This section has been held to state an affirmative defense. *State v. LeDent,* 185 Neb. 380, 176 N.W. 2d 21 (1970) ; *cf. LeDent v. Wolff,* 334 F.Supp. 64 (D. Neb. 1971).

right to grant immunity to witnesses in criminal prosecutions, [such] a promise . . . would not be legally effective or binding." *Commonwealth v. Carrera*, 424 Pa. 551, 554-55, 227 A.2d 627, 630 (1967). *See also State v. Brown*, 321 A.2d 478 (Me. 1974) (collecting authority). Thus, whether or not Presto would as a practical matter ever have been prosecuted, the fact remains that he could have been, and since he could have been, he had the right to invoke his fifth amendment privilege.

There might be a case in which the inability to question an informer due to his invocation of the right not to incriminate himself would rise to the level of a violation of due process or fundamental fairness. Serious questions are raised where the defense is entrapment, the informer is the only non-police eyewitness, and the informer refuses to testify. On the present record, however, this case does not rise to that level. It was the defense that called Presto to the witness stand. From almost the first question asked (quoted *ante* at 3), defense counsel warned Presto that he might incriminate himself. This is inconsistent with appellant's present contention that as a police agent Presto could not possibly be guilty of any crime. If he could not, why warn him that he could? Indeed, appellant's present contention appears to have been thought of after the trial and in support of this appeal. Thus it is never mentioned in the colloquy prior to Presto's returning to the stand, although this colloquy covers eighteen pages of the transcript.[7] We have therefore concluded that the trial judge ruled properly. Assuming *arguendo* that appellant might have had a due process argument, he does not have it now, since it is inconsistent with the course he took at trial.

Judgment of sentence affirmed.

_____

7. Nor was there any request that a hearing be conducted as to whether Presto had properly invoked his privilege. Rather, appellant appears to have proceeded on the assumption that Presto had participated in a crime.