## Commonwealth *v.* Curges, Appellant.

252

Submitted November 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John H. Corbett, Jr.,* Trial Defender, *John J. Dean,* Chief, Appellate Division, and *Ralph J. Cappy,* Public Defender, for appellant.

*Robert L. Eberhardt,* Assistant District Attorney, *John M. Tighe,* First Assistant District Attorney, and *John J. Hickton,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., February 2, 1976:

The sole contention raised in the instant appeal is that appellant was denied effective assistance of counsel because trial counsel's illness prevented her from adequately cross-examining the Commonwealth's witness on the issue of entrapment.

On December 3, 1971, appellant was arrested on charges of possession and sale of narcotics arising out of the alleged sale of four "half spoons" of heroin to an undercover agent on September 22, 1971. The Allegheny County Grand Jury returned bills of indictment on January 18, 1972, in which appellant was charged with possession of narcotics, dealing in narcotics and conspiracy. On March 8, 1972, after waiving his right to trial by jury, appellant was found guilty of the second and third counts of the indictment (dealing in narcotics and conspiracy). On the same date, the lower court rejected appellant's request to be sent to the federal drug rehabilitation program in Lexington, Kentucky, and sentenced appellant to a term of five to ten years' imprisonment. This Court denied appellant's direct appeal in a per curiam order dated January 10, 1975. *Commonwealth v. Curges,* 231 Pa. Superior Ct. 751, 331 A. 2d 514 (1975). After appellant's petition for allocatur to our Supreme Court was denied, he filed a petition for relief pursuant to the Post Conviction Hearing Act.[1] The lower court

---

1. Act of January 25, 1966, P.L. (1965) 1580, §1, 19 P.S. §1180-1 et seq.

held an evidentiary hearing on May 23, 1975, at which time the court rejected appellant's claim of denial of effective assistance of counsel. Appellant challenges herein the court's order denying his petition.

Appellant bases his claim of ineffective assistance of counsel on the allegation that his trial counsel was ill during trial and, therefore, did not effectively cross-examine the Commonwealth's witnesses.

The Commonwealth's first witness, Pennsylvania State Trooper Edward Oliver, was an undercover agent during the period of the alleged sale. He testified that on September 22, 1971, while working in Pittsburgh's North Side, he contacted an addict whom he knew only as "Darin." Darin had previously sold heroin and cocaine to the undercover agent. On this occasion, the agent testified, "I saw this Darin, and I asked him if he had anything.

"And he said that he did. I told him I wanted four half spoons.

"I reached into my right-front pocket, took out $100. I gave it to this Darin.

"He walked away, approximately five yards; and he called this individual here, Curges over; and Curges gave me the four half spoons which I thought I was getting off of Darin which I gave the money to Darin. And Curges gave me four half spoons."

Appellant's trial counsel, Ms. Sallie Radick, a member of the Allegheny County Public Defender Association, cross-examined the undercover agent as follows:

"Q. How were you acquainted with [Darin]?

"A. I was introduced to him through another individual, and I made a dealing with Darin before.

"Q. After the original dealing with Darin, was Darin arrested?

"A. No.

"Q. Is he an informer?

"A. No, ma'am.

"Q. But you made a purchase from Darin.

"A. Yes, ma'am.

"Q. But Darin was not arrested for sales.

"A. He hasn't been found. We have a warrant on him, but he hadn't been found."

Counsel attempted to examine the witness on an additional issue:

"Q. Are you familiar with Louis Hendricks?

"A. Just an individual.

"Q. Is he a user of drugs?

"A. I never saw him use any.

"Q. Is he the informer—

"[The District Attorney] : I object, Your Honor. This is, A, beyond the scope of direct examination; and B, I don't see the relevancy.

"THE COURT: Well, I don't see the relevancy either; but it is beyond the scope of direct examination.

"MISS RADICK: Your Honor, we intend to show that the arrest was made from information received from a Louis Hendricks, a known informer to the police."

The second witness for the Commonwealth, Trooper Russell Clanagan, was also an undercover agent. He testified that he knew appellant and Darin from his undercover work in the neighborhood and that he told Trooper Oliver appellant's name:

"Q. Did you inform him of his name for any particular reason?

"A. Yes. Trooper Oliver made an earlier buy off of him. We had him listed as an alias. Just as a John Doe until we could find out his exact name."

Immediately after Ms. Radick began her cross-examination of Clanagan, Mr. Sullivan, also a member of the Allegheny Public Defender Association, approached the bench and asked the court to permit him to cross-examine the witness. Mr. Sullivan stated no reason for the proposed substitution. The court denied counsel's request. Ms. Radick then pursued several subjects—whether Clan-

agan could describe Darin; how well he knew Darin; whether he was present at the September 22 sale; and how he dressed when working as an undercover agent. The Commonwealth then rested its case. Ms. Radick demurred to the evidence. Her argument was vigorous and complete.

After denial of the demurrer, Mr. Sullivan conducted the defense. Appellant testified in his own behalf and attempted to establish a two-pronged defense: first, that although he lived in the North Side neighborhood and was a drug user, he never sold drugs to either agent Clanagan or Oliver; second, that Louis Hendricks had been arrested and was attempting to frame others to curry favor with the police:

"Q. Mr. Curges, is there a reason why this man [Trooper Oliver] would come in here and say that you sold him heroin, that you know of?

"A. Well, the only reason that I can think of is that I knew Louie Hendricks. And I knew one time, like I don't know, he kept going back to Philadelphia.

"Q. Hendricks did.

"A. Yes, sir. And, then, like one time, like I— somebody from Philadelphia came here, you know; and, then, they, think Louie is going back to Philadelphia for trial.

"And, then, like he was setting people up so the police can pick them up."

During appellant's PCHA hearing, attorney Sullivan alleged that he had been observing appellant's trial when he noticed that Ms. Radick "seemed to be missing what I considered to be several essential questions. I came to counsel table, spoke with her privately. She stated she wasn't feeling well. She was missing things and really didn't understand what I was trying to tell her in my view about what she was missing on entrapment questions."

The revelant law governing a finding of ineffective assistance of counsel is as follows. The services of counsel

must be measured against the customary skill and knowledge which prevails at the relevant time and place of a defendant's trial. *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970). Review of counsel's effectiveness must include a comparison of available alternatives from which counsel chose a final course. *Commonwealth ex rel. Sprangler v. Maroney*, 423 Pa. 589, 225 A. 2d 236 (1967) ; *Commonwealth ex rel. LaRue v. Rundle*, 417 Pa. 383, 207 A. 2d 829 (1965).[2] This Court, therefore, must make "an independent review of the record, . . . and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. . . . We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interest. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604-05, 235 A. 2d 349, 352-53 (1967). See also, *Commonwealth v. Skurkis*, —— Pa. ——, 348 A. 2d 894 (1975) ; *Commonwealth v. Woody*, 440 Pa. 569, 271 A. 2d 477 (1970).

After an independent review of the record, *Commonwealth v. Woody*, supra, we reject appellant's contention for several reasons. First, our review of the record indicates that Ms. Radick did cross-examine both Common-

---

2. Cf. *Brubaker v. Dickson*, 310 F.2d 30, 38 (9th Cir. 1962) : "Facts are alleged from which it would appear that these potential defenses would have suggested themselves to a reasonably diligent trial counsel. The defense actually tendered was so insubstantial in relation to those not offered as to cast doubt upon the hypothesis that trial counsel made a deliberate informed choice."

wealth's witnesses on relevant issues. Mr. Sullivan testified at the PCHA hearing only that *in his view* Ms. Radick was not asking the proper questions on the issue of entrapment. That attorneys disagree on trial strategy does not mean that the chosen course amounts to incompetence. Further, even if Mr. Sullivan would have cross-examined the witnesses more vigorously than did Ms. Radick, a matter of pure speculation for this Court, that fact does not amount to a finding of incompetence because the record indicates the pursuit of reasonable trial strategy.[3]

Second, appellant defended on the ground that he did not make the sale and that he had never met Trooper Oliver. Trooper Oliver testified to the contrary. Trooper Clanagan testified that Oliver identified appellant as the seller. Thus, the central issue was one of credibility. The court believed that the sale took place and that appellant sold the drugs. Entrapment of appellant by Hendricks into making a sale to Oliver or arrest of appellant based on Hendricks' false accusation was a highly speculative defense. Even if Ms. Radick had not attempted to pursue the defense, counsel is not incompetent for failing to pursue all possible defenses, especially when highly speculative. *Commonwealth v. Skurkis,* supra. See also, *Commonwealth v. Whiting,* 449 Pa. 275, 281, 296 A. 2d 788, 791 (1972).

Third, Ms. Radick did attempt to examine the Commonwealth's witnesses on their association with Louis Hendricks. Ms. Radick asked Trooper Oliver whether Hendricks was the informer who was instrumental in

---

3. In his PCHA petition, appellant alleged that Ms. Radick was sick during trial. In the record, neither Ms. Radick nor Mr. Sullivan told the trial court that counsel was not well. The trial transcript indicates adequate cross-examination by Ms. Radick. Thus, neither the alleged illness nor the possibility that another attorney would have conducted trial in a different manner compels a finding of incompetence when the record indicates adequate pursuit of trial strategy.

setting up Oliver's purchase of drugs from appellant. The lower court disallowed the question. Mr. Sullivan contended during the PCHA hearing that Ms. Radick did not understand the entrapment issue in the case. Her attempt to examine Oliver on the issue belies that contention. Further, appellant does not now attempt to litigate the lower court's ruling that inquiry into entrapment was improperly raised. That issue would have been properly raised in appellant's direct appeal.

Thus, we have reviewed the entire record and find that appellant's claim of ineffective assistance of counsel is without merit. Order of the lower court is affirmed.