356 A.2d 745

COMMONWEALTH of Pennsylvania

v.

William Francis KAHLEY, a/k/a Gerald Guido, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued Jan. 23, 1976.

Decided April 7, 1976.

274

Raymond C. Schlegel, Thomas M. Golden, Reading, for appellant.

Grant E. Wesner, Deputy Dist. Atty. for Law, Charles M. Guthrie, Reading, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, William Francis Kahley, a/k/a Gerald Guido, was tried and convicted by a jury in the Court of Common Pleas, Berks County, on charges stemming from the robbery and shooting death of one Frank James Szabo in the victim's home on February 19, 1973. Post-trial motions in arrest of judgment were filed, argued and denied. Judgment of sentence was imposed and this appeal followed.[1]

 Appellant first argues that the trial court erred in admitting into evidence testimony by a state trooper that he had invoked his Fifth Amendment privilege and refused to answer questions at the time of his arrest.

---

1. Appellant was convicted of murder of the first degree and sentenced to life imprisonment to be followed by consecutive sentences of one to two years for conspiracy, ten to twenty years for robbery, and three and one-half to seven years for assault with intent to kill. We assumed jurisdiction of the appeal from the murder conviction pursuant to Appellate Court Jurisdiction Act, Act of July 31, 1970. P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1). The non-homicide convictions were appealed to the Superior Court whereupon the matters were certified to this Court for consolidation and consideration.

We have recognized that testimonial reference to an accused's silence at the time of arrest is a constitutionally impermissible violation of the accused's right against self-incrimination under both the Federal Constitution, *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972) and our Pennsylvania Constitution, *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973). Further, we have stated that the difference between prosecutorial use of an accused's silence *at trial*, which was expressly condemned by the United States Supreme Court in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and the use of the accused's silence *at the time of arrest* as being "infinitesimal". *Commonwealth v. Haideman*, supra at 370, 296 A.2d at 767. However, the essence of this objection which compels the award of a new trial is that the improper reference to the accused's exercise of his constitutional right is made either by the prosecution or by the Court. *Griffin v. California*, supra. The constitutional protection involved will not tolerate the Commonwealth or the Court suggesting that an accused's resulting silence is evidence of guilt. Thus, the inapplicability of this principle is obvious where, as here, the testimonial reference to the accused's silence was first introduced by the defense.

The record reveals that defense counsel, during cross-examination of the state trooper, elicited the following responses:

"Q. After you took Mr. Kahley into custody, did you question him?

A. No, sir, I did not.

Q. Do you know if any state policeman questioned him?

A. No, sir, they did not.

Q. No state policeman asked him any questions?

A. We attempted to question Mr. Kahley and he exercised his rights under the Fifth Amendment.

Q. Well, it is correct, is it not, that he has never said to you that he was at the Szabo residence?

A. That is correct.

Q. He has never said that he was there?

A. That is correct.

Q. Well isn't it correct that he has been in custody since February 13, 1974?

A. Yes, sir."

This was not an instance of a witness blurting out prejudicial information in an unresponsive answer. The questions posed deliberately extracted the information that now forms the basis of appellant's complaint. Defense counsel made no effort to eradicate the possible prejudice of this answer by a request that the answer be stricken or that curative instructions be immediately given. To the contrary, it is apparent, that the defense sought to use this testimony to support the theory of the defense, that Kahley was not present at the scene of the crime.

██ ██ The Commonwealth, in an effort to offset this tactical move by the defense, posed the following question during re-direct examination of this witness—the answer was received without objection by the defense.

"Q. Trooper Pease, on cross-examination, you were asked whether you questioned the defendant, Mr. Kahley, and you indicated that you did not. You also indicated that he would not answer any questions after you advised him of his Fifth Amendment rights?

A. That's correct."

Although we have held that the failure to challenge an accusation does not permit an inference of a tacit admission, *Commonwealth v. Schmidt*, 452 Pa. 185, 204–207, 299 A.2d 254 (1973); *Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 85–88, 223 A.2d 296 (1966) we have never suggested that silence should be construed to be an affirmative denial of the proposition presented. This

is obviously the inference the defense attempted to gain from the reference to Kahley's silence. The exercise of the privilege was merely a neutral act from which no inference, either affirmative or negative, could properly have been drawn and the Commonwealth still maintained its burden to establish the fact asserted by other evidence. At this juncture, either side could have requested an instruction from the Court and eliminated this illusory issue. Regrettably, neither elected to do so. The defense presumably sought to press its advantage and the Commonwealth (probably unwisely) attempted to further clarify its position by additional questioning. The following transpired:

"Q. Trooper Pease, will you in detail advise the Court and the jury what you did in relation to advising Mr. Kahley of his rights and his response thereto in regard to your questioning of him?

MR. SCHLEGEL [Defense counsel]: May it please the Court, I object to that. We haven't raised any question that the defendant's rights were violated and I don't think that going into this in detail is relevant.

THE COURT: Well, I think the nature of the words between Trooper Pease and the defendant has been raised and we might as well get the whole story on it."

After reading the warnings which were given to appellant, the trooper continued his testimony:

" . . . I asked Mr. Kahley if he understood he had the right to remain silent and he indicated that he did. I asked Mr. Kahley if he wished to have an attorney and he indicated he did. We subsequently contacted an attorney for Mr. Kahley.

Q. Did you thereafter question Mr. Kahley?

A. We attempted to ask Mr. Kahley about several details of the crime and Mr. Kahley refused to answer any questions under his Fifth Amendment rights."

██ Appellant focuses his present contention on this particular segment of the record. Although the objection could have been more precise, it should have alerted the trial judge to the problem presented. Hindsight judgment would suggest that the Court should have precluded further exploration of this area and at this juncture explained to the jury the legal significance of the evidence on this point, heretofore presented. Nevertheless we do not believe his allowance of the testimony which followed the objection justifies the grant of a new trial. An analysis of the testimony received after the objection satisfies us that it was merely a repetition of that which the jury had previously been advised, i. e., that Kahley elected to exercise his constitutional right under the Fifth Amendment to remain silent. We find no justification for a conclusion that this reference was any more offensive that the earlier ones. This particular line of questioning was not deliberately designed to suggest an inference of guilt but rather to refute the defense's improper premise that the silence should be construed as supportive of appellant's position at trial that he was not present at the scene.[2] It is also significant that the defense made no effort to pursue the objection by requesting clarifying instructions to avoid any possible prejudice that might have been created by this additional reference to the subject.

██ Appellant argues that the information received after the objection was distinguishable from the earlier testimony in that it introduced for the first time the fact

---

2. The factual situation presented here is significantly different from that presented in *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590 (1973). In both cases, the jury first became aware that the defendant refused to participate in police interrogation through defense questioning; there the similarity ends. Here, the subsequent references by the prosecution were made to negate an inference that the defense had improperly suggested. Whereas, in *Stafford*, supra, the prosecution's references were designed solely for the purpose of suggesting the impermissible inference of guilt from the accused's exercise of his privilege.

that the accused also sought the benefit of his Sixth Amendment right to counsel. It is contended that this compounds the error and created additional prejudice which was not present as a result of the original reference to the exercise of the Fifth Amendment privilege. We do not agree. Although the trooper indicated that appellant did express the desire to have counsel present, his testimony clearly set forth the assertion of the Fifth Amendment privilege as the sole basis for Kahley's refusal to answer questions put to him by police officials. We find that no additional prejudice was created by the statement that Kahley also desired to have counsel if and when he agreed to participate in the interrogation.

Appellant next contends that the Court erred in permitting the testimony of a Commonwealth witness who was neither listed on the bill of indictment nor on the list of prospective witnesses which defense counsel had requested in a bill of particulars. We disagree. At trial, appellant presented a defense of alibi. Both he and his wife testified that on the night in question, Kahley was at his home in Philadelphia and remained there the entire night. The Commonwealth then called Mrs. Roberta Chesonis who testified on rebuttal that appellant and another man had come to her home in Shoemakersville, Berks County, late on the night of the incident, at which time she learned of their participation in the shooting. She further testified that the men had slept in the living room and left the next day.

Appellant argues that under the reasoning of our decision in *Commonwealth v. Jackson*, 457 Pa. 79, 319 A.2d 161 (1974), the Commonwealth was required to furnish the names of any witnesses it intended to call to refute the testimony of the alibi witnesses offered by the defense. His reliance on *Jackson*, supra is clearly misplaced. *Jackson*, supra was decided at a time when Pennsylvania Rule of Criminal Procedure 312 was

operative.[3] Rule 312 required the defense to notify the Commonwealth of the identity and whereabouts of any witnesses they intended to call for establishing the defense of alibi. We reasoned in *Jackson* supra that it was necessary for the Commonwealth to afford the accused reciprocal discovery rights. At the time of the instant trial, Rule 312 was not in effect and appellant had not furnished the Commonwealth with the list of alibi witnesses he intended to call. There was therefore, no obligation upon the Commonwealth to offer the names of any witnesses they might deem necessary to challenge the credibility of the alibi testimony.

Furthermore, we do not believe the Commonwealth was required to list the name of Mrs. Chesonis as a potential witness in the bill of particulars. "The function of a bill of particulars is to enable the accused to prepare for trial and prevent surprise", *Commonwealth v. Simione*, 447 Pa. 473, 476, 291 A.2d 764, 766 (1972). The Commonwealth had properly listed the crimes charged and those witnesses it intended to call during the case in chief, thereby enabling appellant to prepare his defense. However, the Commonwealth did not learn until time of trial that a defense of alibi would be presented. Therefore, the prosecution could not have been expected to list a witness it thereafter decided to call to rebut that defense.

Appellant also claims that the testimony of Mrs. Chesonis should have been suppressed because her identity as a witness was obtained by the police from a tainted source. The suppression court had previously ruled that an illegal search occurred at appellant's apartment shortly after his arrest on February 13, 1974, and ordered that all evidence seized as a result of that search would be inadmissible at trial. One of the items seized was ap-

---

3. This Rule has been subsequently abandoned. *Commonwealth v. Contakos*, 455 Pa. 136, 314 A.2d 259 (1974).

pellant's telephone bill which listed the telephone number of Mrs. Chesonis. On cross-examination, Mrs. Chesonis stated that she was first contacted by police sometime after Kahley's arrest. Appellant argued that the name of this witness had been obtained from the illegally seized telephone bill and requested that the trial judge declare a mistrial. In response, the Commonwealth countered that it had learned of this witness through an independent source and that Mrs. Chesonis had in fact spoken with police several days prior to Kahley's arrest. The state trooper was recalled and testified from written notes that he first spoke with Mrs. Chesonis on February 6, 1974, and that she signed a statement three days later.

The Court found that Mrs. Chesonis had been mistaken with respect to the dates of her conversations with the police and ruled the testimony was admissible in that it had not been acquired from a tainted source. Our responsibility upon review is to determine whether the record supports the factual finding of the lower court and the legitimacy of the inferences and legal conclusions drawn therefrom. *Commonwealth v. Boone,* 467 Pa. ——, 354 A.2d 898 (1975). Under this test we find that the testimony was properly admitted into evidence.

■ Appellant challenges the refusal of the trial court to grant a mistrial when Mrs. Chesonis referred to photographs which the police brought to her home. During defense counsel's cross-examination of this witness, the following occurred:

"BY MR. SCHLEGEL:

"Q. Did Trooper Peace then come back?

"A. I had spoken with them again at a later date.

"Q. When was that?

"A. I don't recall exactly.

"Q. Did they come to your house again?

"A. I had seen some photographs, yes.

"MR. SCHLEGEL: May it please the Court, may I see Your Honor at sidebar?

"THE COURT: Yes.

(The following occurred at sidebar):

"MR. SCHLEGEL: May it please the Court, I would move at this time for a mistrial because of this witness's reference to photographs."

It is urged that this reference to photographs was highly prejudicial in that it suggested that Kahley had a prior criminal record and therefore required a new trial under *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). In *Allen*, supra, we held that not all references to photographs warrant a new trial. Rather, that remedy was limited to those instances where the reference reasonably permits the jury to infer prior criminal activity by the accused.

"The suggestion that any reference to a defendant's photograph is so prejudicial that an inflexible rule of reversal must apply is explicitly rejected. We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity." *Id*. at 181, 292 A.2d at 375.

Appellant's argument is predicated upon the assumption that the police had presented a picture of Kahley to this witness. Significantly, Mrs. Chesonis *never* testified that she either was shown or identified any pictures of *this appellant*. She merely stated that she had viewed

some photographs. From the testimony of this witness there was no basis from which to conclude that the police had any photographs of appellant in their possession. It therefore follows that the jury could not reasonably infer that this appellant had previously engaged in criminal conduct from such an innocuous statement.

 Appellant alleges four assignments of error by the suppression court in failing to suppress the evidence of the lineup identifications. First, appellant contends that four days prior to the lineup the witnesses were improperly shown photographs of him. The evidence adduced at the suppression hearing established that the wife and son of the deceased reviewed a packet of approximately seventeen snapshots to determine whether any of the individuals pictured were involved in the occurrence.[4] Included in the group of photographs were three pictures of appellant, showing various front and side views and differing hair lengths. The witnesses reviewed the photographs and selected two of the pictures of Kahley as resembling one of their assailants.[5] Appellant now claims this procedure influenced their selection at the lineups. Rather than being unduly suggestive, we believe the method employed aided in establishing the certainty of the identifications. Moreover, Mrs. Szabo and her son both testified at the suppression hearing that the basis of their lineup identifications was an independent recollection of appellant from the incident itself.

 Second, appellant asserts that his clothing improperly distinguished him from the rest of the group. This allegation is not supported by the record. Both witnesses stated that their recollection was that all of the

4. At trial, no reference was made to the photograph identifications by Mrs. Szabo and her son.

5. Both witnesses selected the same pictures of appellant which had been taken within a year of the incident. The third picture which they could not identify was taken approximately seven years prior to the shooting.

lineup participants were dressed similarly. Moreover, although appellant was represented by counsel at the lineup, that counsel was not called by the defense to testify that any impropriety or suggestive procedures had been employed.

Third, appellant argues that he was deprived of proper and fair representation at the lineup because he was subsequently represented by different counsel at trial. While we have held that an accused is guaranteed the right of counsel, *Moore v. Jamieson,* 451 Pa. 299, 307, 306 A.2d 283, 287 (1973), we have never required that the same counsel must represent the defendant at each stage of the proceedings. Absent any demonstrable prejudices because of the change in counsel, we cannot find that his right to the effective assistance of counsel had been violated. There is no allegation that the change in counsel deprived the defense of any information relating to the earlier proceedings. While, as suggested in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967) lineup counsel provides the accused with a credible witness as to what transpired during that proceeding, the fact of change in representation in this case did not preclude this possibility. There was nothing to indicate, nor is it argued, that lineup counsel was not available to be called as a witness if the defense had decided upon that course.

Fourth, appellant claims that his right against self-incrimination was violated because all the lineup participants were asked to smile, speak certain phrases and show their hands. It is firmly established that this type of non-testimonial evidence is beyond the purview of both State and Federal constitutional protection.

"(B)oth federal and state courts have usually held that it [the privilege] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, *to write* or speak for identification, to

appear in court, to stand to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." (Emphasis supplied). *Schmerber v. California*, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966).

It is also urged that the trial court erred in permitting the Commonwealth to cross-examine a defense witness, one Sal Felicetti about his prior criminal record. Felicetti had been convicted for burglary and larceny (in an unrelated case) and at time of trial was serving a 4–48 month sentence at Berks County Prison. In our recent decision in *Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973) this Court had occasion to discuss the law in this jurisdiction concerning impeachment of a witness.

"This Court has in the past permitted the use of prior convictions of felonies or misdemeanors in the nature of *crimen falsi* to impeach the credibility of a witness. See, e. g., *Commonwealth v. Peterman*, 430 Pa. 627, 244 A.2d 723 (1968); *Commonwealth ex rel. Sprangle v. Maroney*, 423 Pa. 589, 225 A.2d 236 (1967); *Commonwealth v. Butler*, 405 Pa. 36, 173 A.2d 468 (1961). More recently, we have recognized that, in order to prevent smearing rather than merely discrediting of the witness, such impeachment should be limited to crimes involving dishonesty or false statement. *McIntosh v. Pittsburgh Railways Co.*, 432 Pa. 123, 125, 247 A.2d 467 (1968). See also, *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). Cf. *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971). Accord, Model Code of Evidence, Rule 106(1)(b); Uniform Rule of Evidence 21; McCormick, Evidence § 43 at 91; 3A Wigmore, Evidence § 926 (Chadbourn

rev. 1970). Applying that test to the case at bar, we have serious doubts that under-age drinking involves a character trait that would suggest a propensity for false swearing." *Id.* at 464, 309 A.2d at 593.

We agree with appellant's interpretation of *Katchmer,* supra, as a limitation upon the former rule which allowed the impeachment of a witness by the proof of a prior conviction for *any felony.* However, *Katchmer* clearly reaffirmed the right to impeach where the prior conviction involved a crime of dishonesty or false statement. This would unquestionably embrace convictions for burglary and larceny.

The next assignment of error relates to appellant's requested points for charge. Upon review of the record we are satisfied that the subject matter touched upon by these requests was adequately covered by the trial judge's charge.

"Additionally, the trial court is not required to accept the language of the point submitted by counsel but rather is free to select its own form of expression. The only issue is whether the area is adequately, accurately and clearly presented to the jury for their consideration. Compare *Commonwealth v. Nelson,* 396 Pa. 359, 366, 152 A.2d 913, 917 (1959); *Commonwealth v. Clanton,* 395 Pa. 521, 526, 151 A.2d 88, 91 (1959)." *Commonwealth v. McComb,* 462 Pa. 504, 509, 341 A.2d 496, 498 (1975). (Footnote omitted). See also, *Commonwealth v. Rose,* 449 Pa. 608, 297 A.2d 122 (1972).

Appellant next contends that the Court erred in refusing his challenges for cause as to certain prospective jurors. Because none of these individuals were ultimately selected to serve in this case and there was no allegation that the resultant loss of preemptory challenges in any way prejudiced appellant, the objection is without merit.

■ Additionally, he contends the Court improperly refused defense counsel permission to ask certain questions on voir dire. In fact, a reading of this portion of the record indicates that most of these questions had already been covered by the Court and those which were excluded were not the proper subject of voir dire examination.

"It is well-settled that '[t]he examination of jurors under voir dire is solely for the purpose of securing a competent, fair, impartial and unprejudiced jury. . . . Neither counsel for the defendant nor for the Commonwealth should be permitted to . . . ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion may be or what his attitude or decision will likely be under certain facts which may be developed in the trial of the case. While considerable latitude should be permitted on a voir dire, *the inquiry should be strictly confined to disclosing qualifications of a juror and whether a juror has formed a fixed opinion or may be otherwise subject to disqualifications for cause.' Commonwealth v. McGrew*, 375 Pa. 518, 525, 100 A.2d 467, 470 (1953) (emphasis added). *See, Commonwealth v. Biebighauser*, 450 Pa. 336, 346, 300 A.2d 70, 75 (1973); *Commonwealth v. Hoss*, 445 Pa. 98, 107, 283 A.2d 58, 63, 64 (1971); *Commonwealth v. Swanson*, 432 Pa. 293, 299, 248 A.2d 12, 15 (1968); *Commonwealth v. Lopinson*, 427 Pa. 284, 297–98, 234 A.2d 552, 560–61 (1967). The scope of voir dire examination rests in the sound discretion of the trial judge, *see, e. g., Commonwealth v. Biebighauser*, supra; *Commonwealth v. Lopinson*, supra, and we are satisfied that the record before us fails to demonstrate any abuse of that discretion." *Commonwealth v. Johnson*, 452 Pa. 130, 134–135, 305 A.2d 5, 7 (1973).

■ It is also claimed that the Court erred in refusing appellant's request for a daily transcript of the notes

of testimony. Appellant has presented no authority and our research has failed to discover any support for the proposition that such a denial deprives an accused of due process. Nor are we persuaded that the adoption of such a policy is necessary to ensure a fair trial for indigent defendants.

Finally, appellant argues that the verdict was against the weight of the evidence because of certain factual discrepancies in the Commonwealth's evidence. Variances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence.[6] As we have often stated:

> It is the province of the trier of facts to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Smith*, 457 Pa. 638, 640, 326 A.2d 60, 61 (1974); *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973); *Commonwealth v. Garvin*, 448 Pa. 258, 269, 293 A.2d 33, 39 (1972). The fact-finder is free to believe all, part, or none of the evidence. *Commonwealth v. Smith*, supra; *Commonwealth v. Roots*, 452 Pa. 535, 541, 306 A.2d 873, 877 (1973); *Commonwealth v. Williams*, 450 Pa. 158, 162, 299 A.2d 643, 645 (1973); *Commonwealth v. Oates*, 448 Pa. 486, 490, 295 A.2d 337, 339 (1972). *Commonwealth v. Murray*, 460 Pa. 604, 334 A.2d 255, 257 (1975).

Judgment of sentence affirmed.

ROBERTS and MANDERINO, JJ., filed dissenting opinions.

ROBERTS, Justice (dissenting).

I dissent. The Commonwealth impermissibly used at trial before a jury appellant's assertion of constitutional rights at the time of his arrest to create an inference of

---

**6.** Although appellant did not directly raise the issue, our review of the record satisfies us that the evidence was sufficient to support the convictions.

appellant's guilt. I would reverse the judgment of sentence and remand for a new trial.

During cross-examination of the arresting officer, appellant's counsel established that appellant never stated to any policeman that he was at the scene of the crime. The officer stated that appellant exercised his fifth amendment right to remain silent. On redirect, the Commonwealth elicited substantially the same response. Appellant did not object, nor could this initial answer be construed to be prejudicial since it was substantially the same testimony received on cross-examination.

The Commonwealth, however, over objection, continued to question the officer concerning appellant's exercise of constitutional rights. In response, the officer read all of the *Miranda* warnings; indicated appellant's response to each warning; testified for the first time that appellant exercised his right to an attorney; and reiterated appellant's assertion of his right to remain silent. The majority admits that the trial court erred by allowing these questions and responses. It attempts to excuse this obviously impermissible line of questions by asserting: "[I]t was merely a repetition of that which the jury had previously been advised." To the contrary, this testimony concerning *Miranda* warnings dramatized appellant's refusal to make a statement to police and allowed the jury to infer guilt from a legally neutral assertion of constitutional rights.* I find no basis for the majority's conclusion that these additional in-depth questions on redirect examination were "[no] more offensive than the earlier ones."

---

* The majority, ignoring the prejudicial effect of the Commonwealth's questions, states that the Commonwealth was merely refuting appellant's implication that silence connotes lack of guilt. If this were the Commonwealth's only intention, it should have requested an instruction that no inference may be drawn from appellant's silence. There is no justification for the Commonwealth's questions on redirect examination concerning *Miranda* warnings, which went beyond the initial inquiry on cross-examination, which were admittedly irrelevant, and which were highly prejudicial.

In *Commonwealth v. Haideman,* 449 Pa. 367, 370–71, 296 A.2d 765, 766, 767 (1972), this Court held:

"Testimonial reference to an accused's silence and his request for a lawyer at time of arrest is a constitutionally impermissible violation of the accused's Fifth Amendment right. . . . As the Fifth Circuit observed, '[w]e would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt.' *Walker v. United States,* 404 F.2d 900, 903 (5th Cir. 1968)."

See *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

In *Commonwealth v. Stafford,* 450 Pa. 252, 263, 299 A.2d 590, 596, cert. denied, 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404 (1973), this Court made clear that the *Haideman* rule is applicable whether or not appellant himself elicits testimony concerning the exercise of his right to remain silent:

"That the appellant himself brought his silence, at the time of his arrest, to the jury's attention does not justify the prosecutor's grasping the opportunity to suggest that the appellant's guilt be inferrred from his silence at that time."

*Haideman* and *Stafford* control this case and require a reversal of appellant's conviction.

MANDERINO, Justice (dissenting).

I dissent. Notwithstanding the fact that the testimonial reference to appellant's silence at arrest was first introduced by the defense, the prosecution nevertheless exploited that mistake. Repeated questions were asked by the prosecution about appellant's exercise of his fifth amendment right, going far beyond the initial reference to appellant's silence posed by the defense. That testimony violated appellant's constitutional right against self-incrimination and was erroneously admitted into evidence.

The majority also upholds the trial court's ruling allowing the prosecution to use a defense witness's prior criminal record involving burglary and larceny for impeachment purposes on cross-examination. It is well-settled law that only crimes of dishonesty or false statement, such as perjury, forgery or cheating, can be used to impeach the credibility of a witness. *See, Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973); *See also*, 3A Wigmore, Evidence § 926 (ed. 1970). I cannot agree with the majority's conclusion that the convictions for burglary and larceny fit into the category of crimes of dishonesty or false statement.

I would, therefore, reverse and remand for a new trial.