380 A.2d 1290

**COMMONWEALTH of Pennsylvania**

v.

**Lloyd MANLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 28, 1976.

Decided Dec. 2, 1977.

78

Malcolm W. Berkowitz and Arthur L. Gutkin, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This appeal arises from convictions on four counts of delivery or possession with intent to deliver a controlled substance, namely heroin, under The Controlled Substance, Drug, Device and Cosmetic Act,[1] and three counts of conspiracy.[2] Appellant's motion for a new trial and in arrest of judgment was denied by the lower court. We affirm.

The record in this case discloses the following facts. On December 1, 1972, State Trooper Benjamin Brooks, a narcotics undercover agent, went to appellant's home. Brooks was accompanied by Oscar Jenkins, an informant. Appellant transferred to Brooks a bag containing five bundles of heroin and collected $500. Later, appellant gave the money to Robert Mangini, who had provided the drugs. Appellant was permitted to retain $125 from the sale.

A second transaction occurred between Brooks and appellant on December 15, 1972, at which time Donna Jackson, a crime commission agent, and Constance Allen, Jenkins' girlfriend, were present with Jenkins.[3] Again, Brooks paid $500 for five bundles of heroin. Appellant gave the cash to Mangini.

Two further transactions, involving six bundles and two bundles respectively, occurred at the appellant's home on January 12, and January 13, 1973. Mangini was present at the third transaction. Appellant received $100 for the final sale.

Appellant was arrested on February 20, 1973. Trial which began on October 25, 1973, resulted in a mistrial. A second trial, postponed by numerous delays and continuances, finally began on April 11, 1975. Appellant defended on the basis of entrapment, saying that he participated in these transac-

1. Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(13) [35 P.S. § 780–113(a)(13)] *as amended.*

2. Act of June 24, 1939, P.L. 872, § 302 (18 P.S. § 4302).

3. There is conflicting testimony as to which transactions Jackson, Allen and Mangini witnessed. Apparently, however, the three were present during at least two of the sales.

tions only because of his friendship with Oscar Jenkins. The jury nevertheless found appellant guilty on all counts. Appellant's post-trial motions were denied and the court imposed sentence.

■ Appellant's first contention is that the prosecution failed to comply with a pre-trial order regarding disclosure of the informer's whereabouts. A defendant's right to disclosure of an informer is recognized in given circumstances. *See, McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967). The obligation of physically producing an informer, however, is not ordinarily imposed upon the prosecution.

Appellant maintains that the Commonwealth was instructed by pre-trial order to reveal the whereabouts of the informer, Jenkins, appellant's admitted friend. Moreover, appellant insists that the prosecution had a duty to produce Jenkins. After a careful review of the order, we find it difficult to say what was required of the prosecution.[4] The record shows, however, that the Commonwealth complied with the order to the extent of supplying appellant with known addresses of Jenkins, as well as addresses of eye-witnesses, Donna Jackson and Constance Allen.

■ Interpreting the pre-trial order to require only full disclosure of known whereabouts, rather than production of the informer, comports with current law, since the prosecution is not compelled to call all material eye-witnesses at trial. *See Commonwealth v. Horn,* 395 Pa. 585, 150 A.2d 872 (1959); *Commonwealth ex rel. Sprangle v. Maroney,* 423 Pa. 589, 225 A.2d 236 (1967). Moreover, in this case in which one and one half years were consumed in pre-trial delays and continuances, most of them at appellant's request, it would

4. The judge originally ordered routine disclosure of the informer's known addresses. When appellant's counsel persisted, the judge ordered the district attorney, "if he [could] find the informant to produce him." The judge concluded, "and, to make any reasonable efforts therein."

have placed an unreasonable burden on the prosecution to have required them to conduct a continuous search for the informer.

One of the most significant deficiencies in appellant's position is that he made no pre-trial request for enforcement of the order as he now construes it. Rather, as late as January 27, 1975, and February 13, 1975, appellant requested continuances so that he could locate witnesses, among them, Jenkins. At trial, appellant's counsel conceded that the prosecution was not required to go out and find the informer or the eye-witnesses. In any event, appellant was not prejudiced, since he personally received leads as to Jenkins' whereabouts just before trial, but failed to find his friend after reasonable efforts. Appellant located Ms. Allen, Jenkins' girlfriend, who testified on appellant's behalf.

■ Appellant's second contention is that he is entitled to dismissal of his indictments under Pa.R.Crim.P. 1100. During the interim between the mistrial and commencement of a new trial, appellant made several unsuccessful requests for dismissal under Pa.R.Crim.P. 1100(e). Then, on December 9, 1974, appellant executed a waiver of "the 270 day rule and as to speedy trial."

Appellant cites *Commonwealth v. Woods,* 461 Pa. 255, 336 A.2d 273 (1975), in which our supreme court held that a new trial which commenced after ninety days from the date of the grant of the new trial was in violation of Pa.R.Crim.P. 1100(e).[5] We need not decide whether a second trial resulting from a mistrial is analogous to a new trial for purposes of invoking Pa.R.Crim.P. 1100(e). Regardless of who is responsible for the numerous delays in this case, appellant's unqualified waiver of his right to a speedy trial, which he executed before the court and in the presence of counsel, renders his contention meritless.

Appellant next asserts that he was subjected to double jeopardy by being required to undergo a new trial after the first resulted in a mistrial.

5. Rule 1100(e) has since been amended to permit a maximum of 120 days between the grant of a new trial and its commencement.

The facts underlying the mistrial are as follows. The Honorable Thomas M. Reed presided over appellant's first trial, which commenced on October 25, 1973. Prior to completion of the first day's testimony, Judge Reed became ill and left the bench. On October 28, 1973, defense counsel made an application for mistrial on behalf of both the Commonwealth and the appellant. Judge Blake, who was then presiding, granted the mistrial and explained that the jury would otherwise be empaneled for a minimum of ten days to two weeks awaiting the return of Judge Reed, who was then hospitalized. Unfortunately, Judge Reed subsequently died, never having returned to the bench.

 The primary consideration in determining the existence of double jeopardy is a defendant's "valued right to have his trial completed by a particular tribunal." *United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion) (Harlan, J.). The Pennsylvania Supreme Court has held that "[d]ouble jeopardy attaches if a mistrial is declared without 'manifest necessity' or without the defendant's request or consent. (citations omitted)." *Commonwealth v. Wideman,* 453 Pa. 119, 122, 306 A.2d 894, 895 (1973). In the instant case, appellant argues that he did not consent to a mistrial and that manifest necessity did not exist. We note first, however, that appellant did effectively consent to a mistrial. Although he did not personally request a mistrial, appellant made no objection when his counsel did so. Therefore, we conclude that counsel's request was binding on appellant. *See, Commonwealth ex rel. Bell v. Rundle,* 420 Pa. 127, 216 A.2d 57, *cert. denied,* 384 U.S. 966, 86 S.Ct. 1599, 16 L.Ed.2d 678 (1966); *Commonwealth v. Nagel,* 246 Pa.Super. 576, 371 A.2d 983 (1977).

 The existence of manifest necessity further negates appellant's double jeopardy claim. The concept of manifest necessity was briefly detailed by Justice Story in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824):

"The law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . "

In *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573, *cert. denied*, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975), the supreme court found manifest necessity on facts identical to those in this case, i. e., illness of the presiding judge which was expected to delay trial for two weeks or more. In such a case, a mistrial is the natural result of the "practical inability of the original tribunal to complete the trial." *Id.* 461 Pa. at 621, 337 A.2d at 576. Taking all of the circumstances into consideration, we find an urgent situation in which the trial court could have properly declared a mistrial *sua sponte.* Both manifest necessity and appellant's consent prompted mistrial, and therefore, appellant was not subject to double jeopardy.

Appellant also contends that he is entitled to a new trial or dismissal of his indictments because evidence he presented established entrapment as a matter of law. The evidence reveals that appellant told Jenkins throughout the subject transactions that he did not deal in drugs and he had no personal access to them. Appellant testified that it was only after repeated telephone calls from his friend that he finally agreed to help Jenkins to secure drugs. Appellant further testified, however, that his prior friendship with Jenkins was marked by only one social encounter in a bar, and that there were no telephone calls and no visits by either of the men to the other's home. Yet, it was on the strength of that friendship alone, appellant insists, that he agreed to "help" Jenkins by admittedly dealing in drugs, which he knew to be illegal. In spite of his assertion that his only motivation for

arranging meetings and participating in sales was friendship, appellant admitted that he received $125 for the first and $100 for the last of the four drug transactions.

When considering a defense of entrapment, rather than focus on a particular defendant's readiness to commit the crime, we will look at the police conduct to determine whether there is a substantial risk that the offense would be committed by one innocently disposed. *Commonwealth v. Jones*, 242 Pa.Super. 303, 363 A.2d 1281 (1976). In the instant case, although Trooper Brooks knew of Jenkins' friendship with appellant, there was no evidence to establish that Brooks knew what contacts Jenkins made with appellant in his attempt to procure drugs, or the number of contacts that occurred before the first sale. There was no evidence showing that Brooks encouraged Jenkins' repeated requests in order to wear down appellant's resolve.

Courts have recognized that:

"[w]hile it is true that under normal circumstances entrapment is usually a jury question, where the evidence points to only one conclusion the question may be decided as a matter of law, just as any other factual issues admitting of only one conclusion."

*United States v. Klosterman*, 248 F.2d 191, 195 (3d Cir. 1957), *cited in, Commonwealth v. Mott*, 234 Pa.Super. 52, 58, 334 A.2d 771, 774-75 (1975). The evidence in this case does not point clearly to only one conclusion, that of entrapment, as appellant asserts. Therefore, the trial judge was correct in presenting the issue to the jury with appropriate instructions.

Appellant next maintains that the prosecution's failure to present evidence to establish the particular amounts of heroin sold by appellant entitles him to dismissal of the indictments or a new trial. The record shows, however, that there was evidence that appellant sold 800 packets of heroin. A defense witness estimated street value to lie between $4,800 and $12,000, while a chemist, a witness for the prosecution, estimated the value to be $10,000. We note

that, contrary to appellant's argument, The Controlled Substance, Drug, Device and Cosmetic Act does not designate the minimum amount of a controlled substance which must be delivered or intended to be delivered in order for criminal liability to result. Since the Commonwealth established that a substantial amount of heroin was transferred and its estimated value, we find appellant's position meritless.

Appellant's objection to a technicality in the court's instruction on the definition of reasonable doubt is waived, since not preserved in the lower court. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

Appellant submits that the trial judge improperly precluded cross-examination of Trooper Brooks concerning a December 23, 1972, transaction. There was no prior testimony regarding the incident. Although appellant contends that the evidence was integral to establishing his entrapment defense, no further evidence concerning this transaction was offered by the defense. Moreover, appellant chose not to call Brooks as his own witness, as he could have done.

The parameters of cross-examination are within the discretion of the trial judge. *Commonwealth v. Donnelly,* 233 Pa.Super. 396, 336 A.2d 632 (1975); *Commonwealth v. Marino,* 213 Pa.Super. 88, 245 A.2d 868 (1968). Here, the judge properly limited appellant's counsel to the scope of direct examination and to matters already established as relevant. Although appellant's counsel sought to make a motion at the time his cross-examination was forestalled, he acquiesced in the court's request that he postpone his motion and did not subsequently pursue it. Therefore, the court had no knowledge of appellant's hope to establish the transaction's relevance or of how he intended to do so.

Appellant's final objection, that Brooks made a prejudicial comment when he stated that because the transaction of December 23, 1972, was not covered in the indictments he was not going to go into the matter, is totally frivolous. We note first that this claim of prejudice was not timely submitted to the lower court for consideration.

Moreover, appellant's counsel directed a question to that specific transaction and thereby elicited the alleged prejudicial remark.

Judgment affirmed.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

HOFFMAN, Judge, dissenting:

Appellant contends that the Commonwealth violated former Rule 1100(e) because it failed to retry him within 90 days after a lower court order declaring a mistrial.[1] I agree and would, therefore, order appellant discharged.

These are the facts relevant to appellant's Rule 1100 claim: On October 29, 1973, appellant's initial trial in the Philadelphia County Court of Common Pleas ended in a mistrial when the trial judge became ill after testimony had begun. On December 27, 1973, a continuance was granted from November 20, 1973, to January 21, 1974, because appellant's attorney was engaged in another trial.[2] On March 5, 1974, appellant filed a Rule 1100(f)[3] application to dismiss charges; he alleged that he should be discharged because more than 90 days had elapsed after the mistrial. On May 6, 1974, the motions court denied appellant's application and listed his trial for June 6, 1974. Another continuance was granted from June 6, 1974, to July 15, 1974, because appel-

1. *See* Pa.R.Crim.P. 1100(e) (1974–75 Supp.). On December 9, 1974, the Supreme Court amended Rule 1100(e). *See* Pa.R.Crim.P. 1100(e); 19 P.S. Appendix. (Effective Dec. 9, 1974).

2. The record lists the reason for the continuance as "attorney on trial." I will assume that this continuance was granted at the behest of *appellant's* attorney. However, lower courts must try to be more specific in stating the reasons for continuances.

3. Rule 1100(f) provides: "At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated. A copy of such application shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon. Any order granting such application shall dismiss the charges with prejudice and discharge the defendant."

lant's attorney was engaged in another trial. A third continuance extended the trial date from July 15, 1974, to July 22, 1974; the record reveals no explanation for this delay. On July 22, 1974, a continuance was granted until September 19, 1974, because appellant's attorney had a medical problem. On September 24, 1974, appellant filed a variety of pre-trial motions, including a renewed Rule 1100(f) application. The motions court continued the trial date from September 24, 1974, to October 7, 1974, in order to study these motions. On October 7, 1974, the motions court dismissed appellant's Rule 1100(f) application and deferred trial until November 25, 1974, because no courtroom was available. On November 29, 1974, the motions court granted a continuance until December 2, 1974, because the Assistant District Attorney was trying another case. On December 2, 1974, appellant renewed his Rule 1100(f) application; the court summarily denied this application. On December 9, 1974, a continuance was granted until January 27, 1975, because appellant's attorney was litigating a case in federal court. The record contains the following certified statement: "I hereby certify, that on [December 9, 1974,] Honorable ALEX BONAVITACOLA orders case cont. to Jan 27-1975 in [Room] 625. Def. atty. on trial in Fed. Court . . . I, the defendant waive the 270 day rule and as to speedy trial." Appellant, his attorney, and Judge BONAVITACOLA all signed the statement. On January 27, 1975, the motions court granted a continuance until February 18, 1975, so that appellant's counsel could locate witnesses; on February 18, 1975, the motions court granted a continuance for the same reasons until February 26, 1975. On February 25, 1975, the medical problems of appellant's attorney necessitated another continuance until April 7, 1975. On April 7, 1975 a final continuance was granted until April 10, 1975, because appellant's attorney again was engaged in trying another case. Finally, on April 11, 1975, appellant's second trial commenced. On April 17, a jury found appellant guilty. This appeal followed the lower court's denial of post-verdict motions, including appellant's claim that the Commonwealth violated Rule 1100(e).

Appellant contends that the Commonwealth violated former Rule 1100(e) because it failed to retry him within 90 days after the October 29, 1973 order granting a new trial. The Commonwealth and the Majority respond that appellant waived his Rule 1100 rights *in toto* on December 9, 1974. I disagree.

In *Commonwealth v. Myrick,* 468 Pa. 155, 161, 360 A.2d 598, 600 (1976), the Supreme Court held that a defendant may waive speedy trial rights protected by Rule 1100. The Court stated that: "Rule 1100 is a rule of criminal procedure designed to implement and protect a defendant's constitutional right to a speedy trial. Its particular terms, however, are neither directly granted by nor required by the Constitution. Nevertheless, the basic requirements for making a valid waiver of constitutional rights, . . . are instructive in our consideration of the validity of a claimed waiver of the protections of rule 1100." Before a court can determine that a defendant has waived his constitutional rights, the record must demonstrate that the decision to waive these rights is an informed and voluntary act of the defendant. The Commonwealth bears the burden of establishing the validity of any waiver. *Commonwealth v. Myrick,* supra 468 Pa. at 162, 360 A.2d at 600.

In the instant case, the record contains a certified statement, signed by appellant and his counsel, which provides, in pertinent part: ". . . Honorable ALEX BONAVITA-COLA orders case continued to January 27, 1975 . . . Def. atty. on trial in Fed. Court . . . I, the defendant waive the 270 day rule and as to speedy trial." The Majority construes this statement as a blanket waiver of appellant's Rule 1100 rights. I believe, however, that this statement clearly reflects a negotiated bargain: Judge BONAVITACOLA agreed to continue appellant's trial until his attorney finished his federal court obligations, *provided* that appellant agreed to waive his Rule 1100 rights for the period of time consumed *in the future* by the continuance.[4] This

4. The Commonwealth could automatically exclude periods of delay resulting from the unavailability of appellant's counsel in computing

bargain did not contemplate waiver of any Rule 1100 rights which may have accrued prior to December 9, 1974, the date of the continuance.

I also find it difficult to believe that a defendant with an appreciation of his bargaining position would knowingly waive his right to include the period *before* a requested continuance in his Rule 1100 computations. When asking for a continuance which would extend the trial date beyond the expiration of the applicable Rule 1100 period, a defendant must be prepared, if requested, to waive any delay caused by the continuance for purposes of Rule 1100. See *Commonwealth v. Hickson,* 235 Pa.Super. 496, 344 A.2d 617 (1975). The waiver of any delay stemming from the continuance is the *quid pro quo* for the grant of the requested continuance. However, the period *prior* to the desired continuance normally has no relevance to this bargaining equation. A defendant who waives this prior period has nothing to gain and everything to lose. Therefore, I find it highly improbable that appellant who had filed three Rule 1100(f) applications before the December 9, 1974 continuance, would knowingly waive any Rule 1100 rights accruing before December 9, 1974, when he would gain nothing in exchange for this waiver.

Because the certified statement clearly reflects a negotiated bargain—a continuance in exchange for waiver of Rule 1100 rights from December 9, 1974, to January 27, 1975,— and because appellant had nothing to gain from a blanket Rule 1100 waiver, I am unwilling to find that the Commonwealth has met its burden of demonstrating that appellant made an informed and voluntary decision to waive his Rule

the 90 day period. *See* Rule 1100(d)(1) and discussion, infra. However, the Commonwealth still stood to gain from the negotiated bargain waiving Rule 1100 rights until a specified date. The partial waiver of Rule 1100 rights relieved the Commonwealth of any obligation to monitor the availability of appellant's counsel until the expiration of the continuance on January 27, 1975. In short, the waiver served as a form of insurance for the Commonwealth.

1100 rights entirely.[5] Accordingly, I would reach the merits of appellant's claim.

Former Rule 1100(e) provided: "A new trial shall commence within a period of ninety (90) days after the entry of an order by the trial court or an appellate court granting a new trial." The Commonwealth asserts that this rule did not apply to orders granting a new trial after a mistrial; instead, the rule only applied to new trials granted on the basis of post-verdict motions. I disagree. In *Commonwealth v. Woods,* 461 Pa. 255, 336 A.2d 273 (1975), our Supreme Court decided that former Rule 1100(e) applied to any court order granting a new trial entered after June 8, 1973, the date of Rule 1100's adoption. Specifically, the Court held that the Commonwealth violated Rule 1100(e) because it failed to retry the defendant within 90 days after a Supreme Court order granting a new trial. *See also Commonwealth v. O'Shea,* 465 Pa. 491, 350 A.2d 872 (1976). I discern no meaningful distinction between a trial court order granting a new trial because of a mistrial and a trial or appellate court order granting a new trial on the basis of post-verdict motions. In either case, a second trial within 90 days is required by the wording of former Rule 1100(e) and is consonant with the desire of the Supreme Court to expedite the trial and retrial of criminal cases.[6] *Commonwealth v. Woods,* supra 461 Pa. at 258–259, 336 A.2d at 274. There-

---

**5.** I note that appellant's signed waiver refers to the "270 day rule" instead of the shorter 90 day Rule 1100(e) period. I do not believe that this affects the validity of appellant's Rule 1100 waiver pertaining to the period between December 9, 1974, to January 27, 1975.

**6.** Amended Rule 1100(e) now provides:

"(1) When a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within one hundred and twenty (120) days after the date of the order granting a new trial.

"(2) When an appellate court has granted a new trial, or has affirmed an order of a trial court granting a new trial, the new trial shall commence within one hundred and twenty (120) days after the appellate court remands the record to the trial court. The date of remand shall be the date as it appears in the appellate court docket."

I intimate no opinion as to the applicability of amended Rule 1100(e) to orders granting a new trial after a mistrial.

fore, I conclude that Rule 1100(e) applies to trial court orders granting a new trial after a mistrial.

I must now determine whether the Commonwealth complied with its obligation to retry appellant within 90 days after the October 29, 1973 mistrial. In computing this 90 day period, the Commonwealth may exclude (1) extensions granted pursuant to a Rule 1100(c) petition, (2) Rule 1100(d)(1) periods of delay resulting from the unavailability of defendant or his counsel, and (3) Rule 1100(d)(2) periods [7] of delay resulting from defense-requested continuances in excess of 30 days. *See Commonwealth v. O'Shea,* supra. Appellant's second trial did not commence until April 11, 1975, 530 days after the October 29, 1973 mistrial. Accordingly, the Commonwealth must establish that 460 days may be excluded from Rule 1100 computations pursuant to Rule 1100(c) or Rule 1100(d)(1) or (2). However, the Commonwealth never filed a Rule 1100(c) petition, and no more than 270 days of delay can be excluded pursuant to Rule 1100(d)(1) or (2).[8] Therefore, I find that appellant's second

7. Rule 1100(c) and (d) provide:

"(c) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced.

"(d) In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as result from:

"(1) the unavailability of the defendant or his attorney;

"(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded."

8. In reaching this conclusion, I have excluded the following periods from my Rule 1100(e) calculations: (1) November 20, 1973 to January 21, 1974 (defense attorney engaged in other trial), (2) June 6, 1974, to July 15, 1974 (same reason), (3) July 22, 1974, to September 19, 1974 (defense attorney ill), (4) December 9, 1974, to January 27, 1975 (appellant waived this period of time in exchange for continuance), (5) February 25, 1975, to April 7, 1975 (defense attorney ill),

trial commenced at least 190 days beyond the applicable Rule 1100(e) period. I would order appellant discharged.

SPAETH, J., joins in this dissenting opinion.

and (6) April 7, 1975, to April 10, 1975 (defense attorney engaged in another trial). In making these calculations, I have assumed for the sake of expediency that the entire period of a continuance resulting from a defense attorney's unavailability may be excluded; I make no attempt to resolve the conflict between Rule 1100(d)(1) and (2) on this issue. I will also assume that one day may be excluded pursuant to Rule 1100(d)(2) as a result of the two continuances granted appellant's attorney to locate witnesses. Again, I make no attempt to decide whether piggybacked continuances granted for the same reason constitute a single continuance for purposes of Rule 1100(d)(2). On these questions and on Rule 1100 generally, *see* M. Vitiello, *Speedy Trial Under Rule 1100: Administrative Ease or Administrative Agony?* 50 Temple L.Q. 513 (1977).