459 A.2d 376

**COMMONWEALTH of Pennsylvania**

v.

**Theresa NUNEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 15, 1982.

Filed April 15, 1983.

Petition for Allowance of Appeal Denied Aug. 1, 1983.

Thomas V. Hunt, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, McEWEN and WATKINS, JJ.

BROSKY, Judge:

This is an appeal from judgments of sentence after convictions in a jury trial for second-degree murder and conspiracy to murder. Appellant contends that: (1) the evidence was insufficient to support the verdict; and (2) the court below erred in not suppressing a statement given by appellant.[1] We disagree with appellant's contentions and affirm the judgments of sentence.

To evaluate the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The fact finder is free to believe all, part or none of the evidence. *Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978).

---

1. Appellant lists four issues in her "Statement of Questions Involved" portion of her brief. The final three issues are, however, in effect only a challenge to the sufficiency of the evidence for the second-degree murder and the conspiracy to murder convictions.

*Commonwealth v. Tate,* 485 Pa. 180, 182, 401 A.2d 353, 354 (1979).

Viewed thusly, the record establishes the following:

 In the early morning hours of September 25, 1980, one Edward Tierney, a Philadelphia police cadet was attacked in appellant's house by her son, Larry Cooper, and two other men. Appellant, who had been asleep, came downstairs and observed one of the men, his hands on Tierney's neck, stating, "What? Ten dollars? Is that all?" Tierney cried out, "I'm a cop. Help me." Cooper said, "We can't let him go." Appellant then told the men to tie Tierney up and handed them a cord she had pulled off her vacuum cleaner. She also handed them a pot, a knife, a fork and scissors to be used to subdue Tierney who was struggling. At that point, police, who had been summoned by neighbors knocked on the door and appellant said, "[G]et rid of him . . . hide him somewhere." In response, the men took Tierney upstairs and silenced him while appellant answered the door and told the police nothing was wrong. After the police left, the men dragged Tierney out to his car and stuffed him in the trunk. However, he continued to resist and the men struck him several times with a ballpeen hammer in order to close the trunk on him. Appellant, who had accompanied the men outside, told a neighbor, "Go in the house. Mind your own business. I know what I'm doing." Cooper then drove off in Tierney's car and dumped him in a creek, where two days later he was found dead with an electrical cord tied around his neck and right wrist, the cause of death being mechanical asphyxia. Appellant cleaned up all the blood in the house with a towel and then gave it to Cooper for disposal. Tierney's watch was given to appellant's paramour; his gun was taken by one of the men involved in the attack; and his car was used by Cooper for the next two days.

After a thorough and careful review of the record, we conclude that the opinion of the court below adequately

disposes of appellant's contentions that the evidence was sufficient to support the verdict.[2]

Appellant's next contention is that it was error for the court below to have admitted a statement given by her, where she was not apprised of her *Miranda* rights, where the statement was given during an alleged custodial interrogation and while she was allegedly reasonably a subject of the investigation. "On review this Court must determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings. In doing so, we will consider only the evidence of the prosecution witnesses and as much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980) (citations omitted).

On this point, the record establishes the following:

At approximately 11 p.m. on September 26, 1980, the police received information that appellant's son and his friends had beaten and killed a man at appellant's residence. The police then visited appellant's house about midnight in order to determine if the incident had in fact occurred.

**2.** We would only supplement the lower court's opinion by noting the following:

(1) The fact that appellant was not charged with robbery, which is the felony underlying the second-degree murder conviction is of no legal significance. See *Commonwealth v. Bastone*, 466 Pa. 548, 553, 353 A.2d 827 (1976).

(2) The nature of the felony in this case is such that it should be obvious to anyone about to embark on such a venture that the lives of the victims may be sacrificed in accomplishing the end. A reasonable man can be properly charged with the knowledge that the natural and probable consequences of such an act may well result in death or grievous bodily harm to those involved. It is not unrealistic to ascribe to one who willfully engages in a plan to commit armed robbery, a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, or a mind regardless of social duty. Thus, when dealing with the felony of armed robbery we are merely saying that it is the same malice that is required for common law murder.

*Commonwealth v. Yuknavich*, 448 Pa. 502, 508 205 A.2d 290, 293 (1972).

Appellant confirmed that her son and his friends had beaten a man.

The police then requested that appellant accompany them to the Police Administration Building (P.A.B.) and give a statement. Appellant was initially concerned about the care of her children, but after her paramour volunteered to look after them, she agreed to go with the police. She was not considered a suspect in the crime at that time. Between 12:45 a.m. and 2:45 a.m., appellant gave a statement at the P.A.B. which extensively incriminated her son and his friends. Since she was considered only an eyewitness at the time, no *Miranda* warnings were administered. Although at some point in the evening, either at appellant's house or at the P.A.B., appellant had told the police that she had not reported the beating and had lied to the officers who came to her house on the night of the crime, the police testified that she also stated that she had done this because she was afraid of her son and his friends.

After the interview was completed, appellant waited in an office area until she was driven home between 8 a.m. and 9 a.m. It was not until almost one month after this interview that the police received information implicating appellant and arrested her.

Appellant's contention that the suppression court erred in admitting her statement is twofold. First, she argues that the court erred because she was questioned without having been given *Miranda* warnings while she was reasonably a suspect in the beating and death of Tierney. While the facts as found by the suppression court and supported by the record belie appellant's contention that she was reasonably a suspect at the time she was first questioned, we need not decide the issue on this basis. For even if appellant was a suspect, "the mere fact that the police investigation has focused on a particular person will not require *Miranda* warnings before police interviews with that person." *Commonwealth v. Anderson,* 253 Pa.Super. 334, 345, 385 A.2d 365, 370 (1978) (citations omitted); See *Beckwith v. United States,* 425 U.S. 341, 349, 96 S.Ct. 1612,

1617, 48 L.Ed.2d 1 (1976). Therefore, even if appellant was reasonably a suspect at the time she gave her statement, that fact would not have been a ground for the court below to have suppressed the statement.

Appellant next argues that the court below erred because she gave her statement during a custodial interrogation without the benefit of *Miranda* warnings. "In determining if ... questioning is 'custodial interrogation,' the test is ... whether the suspect is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action of movement is restricted by such interrogation." *Commonwealth v. Peters*, 473 Pa. 72, 83, 373 A.2d 1055, 1061 (1977) (citations omitted).

■ In the instant case, appellant claims the questioning was a custodial interrogation because despite her reluctance to leave her children, she was taken to the P.A.B. after midnight and kept there until nine o'clock the following morning. However, appellant overlooks the fact that the police simply requested her to accompany them and that she consented to do so only after being assured that her paramour would care for the children. While it is true that she was not returned to her home until nine o'clock, the interview began almost immediately after her arrival at the police station and was concluded within two hours. "[W]e are unwilling to adopt a requirement that warnings be given merely because the police request an interview and it occurs at a police station." *Peters*, 473 Pa. at 84, 373 A.2d at 1061. We agree with appellant that the hour of the interview was undesirably late; but we do not believe that the addition of this fact alone warrants characterization of the interview as a custodial interrogation.

■ Appellant further argues that the police testified that she was "permitted to leave the station in the morning," thereby admitting that she was, in their eyes, in a custodial setting. Even if we were to accept the proposition that this one statement reflected the actual intent of the police, it

would be irrelevant to a determination of the instant issue because "[t]he test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer-interrogator..." *Commonwealth v. Patterson,* 488 Pa. 227, 234, 412 A.2d 481, 484 (1980).

At the suppression hearing, appellant did not contradict the testimony of the police that she was treated simply as an informative witness, nor do the findings of the suppression court as supported by the record indicate otherwise. We therefore conclude that appellant was not deprived of her freedom of action in any significant way, nor was she placed in a situation in which she reasonably could have believed her freedom of movement was restricted. Thus, the suppression court correctly concluded that no *Miranda* warnings had been necessary, and properly admitted appellant's statement.

Accordingly, the judgments of sentence are affirmed.