554 A.2d 62

COMMONWEALTH of Pennsylvania

v.

Steven LINDENMUTH, Appellant.

COMMONWEALTH of Pennsylvania

v.

Bruce S. FENSTEMAKER Appellant.

COMMONWEALTH of Pennsylvania

v.

Gary L. LOMISON, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 9, 1988.

Filed Jan. 3, 1989.

Reargument Denied March 2, 1989.

400

Michael J. Rudinski, Williamsport, for appellant in No. 737.

Peter T. Campana, Williamsport, for appellants in Nos. 738 and 739.

Kenneth A. Osokow, Assistant District Attorney, Williamsport, for Com., appellee.

Before BECK, KELLY and HESTER, JJ.

HESTER, Judge:

Steven Lindenmuth, Bruce Fenstemaker and Gary Lomison each appeal from the judgment of sentence entered against them on October 27, 1987, in the Court of Common Pleas of Lycoming County. They were convicted of criminal attempt to possess a controlled substance with intent to deliver following a consolidated jury trial. Their appeals were also consolidated. We affirm.

The evidence introduced at trial establishes the following. Agent Thomas Sokso of the Internal Revenue Service was investigating a large scale drug dealer by the name of Nicholas DiEspriella. A former companion of DiEspriella turned informant, named Dosso, aided in the investigation. Dosso had sold large quantities of marijuana to Scott L. Brown for DiEspriella in 1984 and 1985 and knew that Brown still owed money to DiEspriella from these deals. Agent Sokso, with the aid of Dosso and Agent Hollier of the Pennsylvania Attorney General's Office, began to gather evidence against DiEspriella by contacting Brown.

The plan was to have Dosso meet with Brown under the pretext of collecting the money. On July 14, 1986, Agents Sokso and Hollier accompanied Dosso as extra intimidation to collect the debt which Brown owed DiEspriella and which Dosso had been unable to collect from Brown. Since Brown did not have the money or any means to raise the money, he eventually agreed to sell marijuana supplied by Dosso to make a profit and repay the debt.

The agents returned to Brown's residence with Dosso to tell Brown that he must have the money before the marijuana would be delivered to him. Agent Hollier threatened Brown that one of his vehicles would be seized for payment

of the debt if he did not come forward with the money to buy the marijuana. Brown, who had not been selling marijuana recently, agreed to collect the money from some friends and meet Sokso at a later date.

On July 28, 1986, agents Sokso and Hollier contacted Brown and arranged to meet him to discuss the deal further. They told Brown that they would provide him with seven pounds of marijuana for the sum of $3,000.00. Brown agreed to get the money from friends and to meet Sokso and Hollier the next day in a parking lot. Brown met with a number of friends from work and told them he would sell them a minimum quantity of one pound of marijuana for $600.00. Appellants were interested and gave their money to Brown since marijuana was not readily available in the Williamsport area at that time.

Brown met with Hollier and Sokso on July 29, 1986. He had only $2,600.00. They agreed to sell him only six pounds. He was arrested after he gave Hollier and Sokso $2,600.00. Brown was then transported to the civil defense building and later decided to cooperate in the investigation. No immunity was given, and no specific leniency was promised. Sokso interviewed Brown about DiEspriella. The investigation was turned over to agent Hollier.

Agent Hollier persuaded Brown to telephone each of his buyers to tell them that the deal had not gone through, that the money was stolen and that he would try to repay them. Each telephone conversation was tape recorded. Each appellant acknowledged that he had given Brown money for the purpose of purchasing a pound of marijuana.

Appellants were charged with criminal attempt to possess with intent to deliver and conspiracy to possess with intent to deliver. They were tried together following denial of their pretrial motions to sever. The jury found appellants not guilty of conspiracy, but did find them guilty of criminal attempt to possess with intent to deliver. This timely appeal followed.

Appellants first contend that the conduct of the agents in threatening Brown and inducing him to buy and sell mari-

juana was outrageous and so fundamentally unfair that it violated their due process rights under the Fourteenth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution. Appellants ask us to dismiss the charges against them on the basis that the veiled threats and conduct toward Brown by the agents was egregious in that government agents threatened force and induced a crime that otherwise would not have occurred. Appellants contend that dismissal is required in order to send a message that police involvement which creates criminal action is a perversion of the criminal justice system, and will not be condoned.

Appellants rely on *United States v. Twigg,* 588 F.2d 373 (3rd Cir.1978) and *Commonwealth v. Mathews,* 347 Pa.Super. 320, 500 A.2d 853 (1985), to support their claim that conduct of government agents can be so outrageous as to bar prosecution even where entrapment is not shown. *See United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). Appellants further posit that Brown's ignorance that he was aiding the government should not insulate it from penalty for outrageous conduct which resulted in its prosecution of appellants.

Initially, we note that, as it relates to due process guarantees, our state constitution affords no greater protection than the United States Constitution. *Coades v. Commonwealth of Pennsylvania Board of Probation and Parole,* 84 Pa.Cmwlth. 484, 480 A.2d 1298 (1984). Accordingly, our analysis below of the federal constitution applies to the state constitution.

■ *Twigg* and *Mathews* held that police involvement in criminal activity can be so outrageous that a prosecution will be barred on due process grounds. This is a legal question to be determined by the court, not the jury. *United States v. Engler,* 806 F.2d 425, 430 (3rd Cir.1986), *cert. denied,* 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987).

Government agents in *Twigg* and *Mathews* supplied money, indispensable equipment and advice in a plan to manufacture drugs. It was held in both cases that the government's role in inducing and supporting the crime was so extensive that it was deemed to negate to the required criminal element of *mens rea* so that prosecution was barred.

Instantly, the agents' involvement was not as extensive nor as intrusive as that involved in *Twigg* and *Mathews*. Furthermore, and key, is the fact that police actions in this case did not affect appellants' *mens rea*, but Brown's *mens rea*. The police coerced Brown, not the appellants, into committing the crime through threats and intimidation. The evidence establishes that appellants offered Brown money for drugs merely because he asked them if they would like to buy some. Notes of Testimony, (N.T.), 5/21/87, at 126. No police coercion or influence contributed to the independent decision by any of the appellants to purchase narcotics. *Twigg* and *Mathews*, therefore, are distinguishable, and we will not extend the reasoning of those cases to a situation where the police initiated the criminal episode by encouraging a third party, not the defendant, to engage in criminal activity and where the third party was unaware that he was being used to further police actions. Appellants dealt with Scott Brown and not directly with the agents. The fact that Brown was induced to sell marijuana below the current market value does not give us cause to extend the lack of *mens rea*/due process defense to appellants on a principal similar to "prosecutorial taint." We agree with the trial court that the agents' involvement in this case does not rise to such a level that prosecution should be barred.

Appellant's second contention is that the conduct of the agents constituted entrapment and the question of entrapment should have been put before the jury. 18 Pa.C.S. § 313. The defense of entrapment, "focus[es] on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other indicia or a

predisposition to commit crime." *Commonwealth v. Taylor*, 299 Pa.Super. 113, 120, 445 A.2d 174, 177 (1982). Thus, we test for entrapment under the Code by objectively assessing police conduct rather than by considering the defendants' prior criminal activity or other indicia or focusing on a subjective evaluation of a defendant's motivations.

In *Commonwealth v. Manley*, 252 Pa.Super. 77, 380 A.2d 1290 (1977), we stated that courts have recognized that:

> [w]hile it is true that under normal circumstances entrapment is usually a jury question, where the evidence points to only one conclusion the question may be decided as a matter of law, just as any other factual issues admitting of only one conclusion.

*United States v. Klosterman*, 248 F.2d 191, 195 (3rd Cir.1957), cited in, *Commonwealth v. Mott*, 234 Pa.Super. 52, 58, 334 A.2d 771, 774–75 (1975).

*Id.* 252 Pa.Super. at 87, 380 A.2d at 1294.

■ First, any police conduct in this case was directed toward Brown, not appellants. Second, we do not find the police conduct in this case to be overly intrusive or to have induced *appellants* to commit a crime that otherwise would not have occurred. *Compare: Commonwealth v. Thompson*, 335 Pa.Super. 332, 484 A.2d 159 (1984), in which a pretty blond "enticed" defendant, a police officer, over a ten month period to provide some marijuana to her; *Commonwealth v. Berrigan*, 234 Pa.Super. 370, 343 A.2d 355 (1975), in which a woman, new to town and an undercover agent, convinced the defendant, in order to earn her gratitude, to obtain some marijuana for her. Instantly, unlike these cases, *appellants* were not unduly swayed to commit a crime by police. Our courts have recognized that drug dealing is a difficult crime to prosecute and police can use artifice and stratagem to detect criminal activity. Merely affording opportunities for the commission of crime by one who already had the criminal intent to engage in such a crime does not defeat the prosecution. *Commonwealth v. Loccisano*, 243 Pa.Super. 522, 366 A.2d 276 (1976). This was the case with appellants.

■ Finally, we see no basis for altering the rule that a defendant enticed by a third party—who was not acting at direction of the police—cannot raise the entrapment defense where the inducing party acted as a private citizen and not as a government agent. *United States v. Jannotti*, 673 F.2d 578, 606 (3rd Cir.1982) (*en banc*), *cert. denied*, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *United States v. Ahmad*, 347 F.Supp. 912 (M.D.Pa.1972), modified 482 F.2d 171, 177 (3rd Cir.1973). Brown's dealings with appellants were independent of and not directed or controlled by government agents. We will not credit a "prosecutorial taint" argument under an entrapment analysis any more than under a due process analysis.

■ Furthermore, we will not view Brown as a government agent merely due to the fact that he was entrapped. Therefore, the government agents dealt with Brown as an independent party and did not deal directly with appellants. Consequently, we find that the trial court was correct that there was no entrapment of appellants as a matter of law, and that the issue of entrapment was correctly withheld from the jury.

Appellants' third argument is that the evidence is insufficient to sustain the jury's verdict of guilty of criminal attempt to possess marijuana with intent to deliver. They argue that the only evidence of intent in this case is the quantity of marijuana involved, and that quantity itself is not sufficient to prove that appellants attempted to possess marijuana with intent to deliver.

In this situation, we must review the evidence in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Derr*, 501 Pa. 446, 462 A.2d 208 (1983). As we stated in *Commonwealth v. Nunez*, 312 Pa.Super. 584, 459 A.2d 376 (1983):

> To evaluate the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict,

and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. Moreover, it is in the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The fact finder is free to believe all, part or none of the evidence. *Commonwealth v. Yost,* 478 Pa. 327, 386 A.2d 956 (1978). *Id.* 312 Pa.Super. at 586, 459 A.2d at 376.

Instantly, the Commonwealth's expert witness, agent Byerly, stated that in his experience a pound of marijuana (16 ounces, 28.2 grams per ounce or approximately 448 grams) was far more than would typically be required for personal use. Agent Byerly testified:

Q: Do you have an opinion about whether or not a pound of marijuana would more likely be intended for a person's own personal use or for delivery to other persons?
A: In my past experiences I have found that a pound of marijuana was usually purchased by a person or received by a person for distribution to other people, in some instances retaining a portion of that for himself, and the profits from the sale or the delivery of the additional or the remaining amounts would cover the amount that was used by that individual.

N.T., 5/23/87, at 170–71.

Agent Byerly further testified:

Q: Do you have an opinion about what quantity of marijuana or what range of quantities would be more likely to be purchased for a person's own personal use?
A: Average, maybe a quarter ounce to an ounce, possibly up to as much as two, three, maybe four ounces.

N.T., 5/23/87, at 172.

While we acknowledge that in this case there is no evidence of ongoing dealings, drug paraphernalia, or other drugs indicating intent to deliver, we have often stated that a large quantity of drugs can support an inference of possession with intent to deliver. *Commonwealth v. Cubler,* 236 Pa.Super. 614, 346 A.2d 814 (1975). In *Commonwealth v. Harmes,* 255 Pa.Super. 147, 151, 386 A.2d 551,

552 (1978), we determined that seven pounds or 112 ounces of marijuana was sufficient to infer possession with intent to deliver. There, we noted that "the seven pounds [of marijuana] possessed by the defendant was 3200 grams, over one hundred times the thirty grams specified by statute to be considered 'a small amount for personal use', 35 P.S. § 780–113(a)(31)." *See also Commonwealth v. Bowermaster*, 297 Pa.Super. 444, 444 A.2d 115 (1982) (four pounds of marijuana sufficient to establish intent to deliver); *Commonwealth v. Chamberlain*, 277 Pa.Super. 503, 419 A.2d 1261 (1980) (ten pounds of marijuana along with paraphernalia was sufficient to establish intent to deliver); *Commonwealth v. Hunt*, 256 Pa.Super. 140, 389 A.2d 640 (1978) (291 grams of marijuana, together with other drugs sufficient). Appellants were trying to buy 448 grams, which is over one hundred times the amount specified in 35 P.S. § 780–113(a)(31).

■ We conclude that appellants' intent to possess one pound (16 ounces or approximately 448 grams) and their act of giving Brown the money to obtain the marijuana is sufficient for a jury to find that they took a substantial step and were guilty of criminal attempt to possess marijuana with intent to deliver.

Appellants' final contention is that the trial court erred in denying their motion for severance of their trials. Pa.P. Crim.P. 1128, "Severance of Offenses and Defendants," provides:

> The court *may* order separate trials of offenses or defendants or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

(Emphasis added).

[8, 9] In *Commonwealth v. Morales*, 508 Pa. 51, 494 A.2d 367 (1985), the Pennsylvania Supreme Court stated the general rule that joint trials of defendants are advisable when the crimes charged arise from the same evidence and much of the same evidence is necessary or applicable to the defendants. *See also Commonwealth v. Jackson*, 451 Pa.

462, 303 A.2d 924 (1973); *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954); *cert. denied,* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954). A single criminal episode exists where a number of charges are logically and/or temporarily related and share common issues of law and fact, and separate trials should not be granted for single criminal episodes since they involve substantial duplication and a waste of scarce judicial resources. *Commonwealth v. Hude,* 500 Pa. 482, 458 A.2d 177, 183 (1983). Further, the defendant must demonstrate that actual prejudice resulted from the joint trial. *Commonwealth v. Patterson,* 519 Pa. 190, 546 A.2d 596, 601 (1988).

In *Commonwealth v. Morales,* we further stated:

This court has consistently held that the decision whether to sever trials of co-defendants is one within the sound discretion of the trial judge and will not be disturbed on appeal absent a manifest abuse of that discretion. *Commonwealth v. Tolassi,* 489 Pa. 41, 49–50, 413 A.2d 1003 (1980). (See cases cited therein); *Commonwealth v. Iacino,* 490 Pa. 119, 415 A.2d 61 (1980); *see also Commonwealth v. Katsofanas,* 318 Pa.Super. 143, 464 A.2d 1270 (1983) and *Commonwealth v. Hamm,* 325 Pa.Super. 401, 473 A.2d 128 (1984).

*Id.* 508 Pa. at 61, 494 A.2d at 372.

An appellant has the burden of demonstrating that the trial court manifestly abused its discretion or created a clear injustice when arguing against a trial court's discretionary ruling that severence will not be permitted. The assertion of a better chance of acquittal if tried separately does not meet this burden. *Commonwealth v. Iacino,* 265 Pa.Super. 375, 401 A.2d 1355 (1979), aff'd 490 Pa. 119, 415 A.2d 61 (1980). We are not persuaded that appellants have satisfied this burden.

Appellants claim that there were several separate transactions involved here and that they were prejudiced as follows. A fourth co-defendant, Mr. Berkheiser, testified that he purchased only one-half pound of marijuana, and

this created the implication that appellants' one-pound purchases were for more than their personal use. They claim that Mr. Berkheiser would not have testified at separate trials. Also, appellant Lindenmuth was prejudiced by testimony of prior deliveries of marijuana by Brown to appellants Fenstemaker and Lomison. Lomison and Fenstemaker were each prejudiced by evidence that the other intended to buy from Brown when this testimony would not have been admissible if they had had separate trials. Once Mr. Berkheiser testified, appellants contend they would have been perceived badly by the jury if they had not testified, and, thus, they had no choice but were forced to testify. Finally, appellants claim prejudice from the diminished number of pre-emptory challenges that they received when they were tried together. A number of jurors were stricken when they knew one or more of appellants.

Initially, we note that a single criminal episode was involved here. Appellants shared a common motive, their acts were logically and temporarily connected, much of the same evidence would have been presented at separate trials and no adverse defenses were shown. Judicial economy weighs heavily in favor of a joint trial. The jury understood that each appellant was to be judged for his actions alone, and the jury could easily separate and follow the pertinent facts applicable to each defendant.

Furthermore, no prejudice resulted. Conspiracy was alleged and all the evidence would have been admissible at separate trials. There is no constitutional right to any pre-emptory jury challenge and appellants failed to demonstrate how they were prejudiced by the limited number of pre-emptory challenges. We find unconvincing appellants' argument that they were compelled to testify by the fact that Berkheiser testified.

Judgments of sentence affirmed.

BECK and KELLY, JJ., concur in the result.