COMMONWEALTH of Pennsylvania, Appellee

v.

Henry WILLIS, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 11, 2010.
Filed Feb. 17, 2010.

Mitchell S. Strutin, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: SHOGAN, LAZARUS and KELLY, JJ.

OPINION BY LAZARUS, J.:

¶ 1 Henry Willis appeals his judgment of sentence imposed on August 28, 2008 after a jury found him guilty of possession with intent to deliver a controlled substance and criminal use of a communications facility. Willis received concurrent sentences of 7 ½ to 15 years and 1 to 2 years in prison, respectively.

¶ 2 Willis claims that he is entitled to: (1) an arrest of judgment because the Commonwealth failed to sustain its burden of disproving entrapment beyond a reasonable doubt; and (2) a new trial as a result of the trial court's error in instructing the jury. We affirm.

¶ 3 The trial court, in its opinion dated November 14, 2008, sets forth the salient facts as follows:

> In early January 2006, [Philadelphia Police] Officer [Graziano] Iezzi, a deputized member of the Drug Enforcement Administration (DEA) local task force, began to investigate [Willis] for possible involvement in the sale of narcotics. [Willis] became a target for investigation when a federal prisoner named Howard Jones provided [Willis'] name to federal authorities as part of a proffer with the United States Attorney's Office. Under the supervision and direction of Officer Iezzi, a confidential informant known as "Pockets" placed several phone calls to [Willis] between January 11 and March 22, 2006. During these phone calls, "Pockets" arranged three separate purchases of crack cocaine from [Willis] at 12th and Filbert Streets in Philadelphia on February 3rd, February 15th and March 22nd. [Willis] was arrested before completing the third sale.

Trial Court Opinion, 11/14/08, at 2.

¶ 4 At trial, Willis asserted the defense of entrapment, claiming that the government, through the actions of its informant

Howard Jones, entrapped him into committing crimes he otherwise would not have committed.

¶ 5 The defense of entrapment is set forth in 18 Pa.C.S.A. § 313:

(a) GENERAL RULE.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) BURDEN OF PROOF.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

(c) EXCEPTION.—The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

18 Pa.C.S.A. § 313.

■ ¶ 6 Willis first argues that he is entitled to an arrest of judgment due to the Commonwealth's failure to "disprove" entrapment. Prior to 1972, when the new Crimes Code was enacted, the law employed a "subjective" test to determine whether a defendant had been entrapped. The focus was on the defendant's predisposition to committing the crime, rather than the conduct of law enforcement. *Commonwealth v. Jensch*, 348 Pa.Super. 142, 501 A.2d 687, 688 (1985). As such, the burden fell on the Commonwealth to disprove entrapment (or lack of intent) beyond a reasonable doubt. *Id.* However, upon the enactment of 18 Pa.C.S.A. § 313 as part of the 1972 Crimes Code, the burden, along with the nature of the test to determine entrapment, shifted. *Id.* The focus of the fact-finder's inquiry became the conduct of the police and the burden shifted to defendants to prove, by a preponderance of the evidence, that they had been entrapped. *Commonwealth v. Jones*, 242 Pa.Super. 303, 363 A.2d 1281, 1285 (1976); *see also* 18 Pa.C.S.A. § 313(b). Thus, Willis' first argument, that the Commonwealth failed to meet its burden of proof, is misplaced and must fail.

■ ¶ 7 Willis also claims that he is entitled to a new trial as a result of erroneous jury instructions by the trial court. Specifically, he complains of the following portion of the jury charge:

If somebody who is not a police officer engages in conduct beyond that requested by or expressly or impliedly authorized by the police, then that may not be considered on the issue of entrapment.

N.T., 7/10/08, at 126.

¶ 8 Willis asserts that this part of the charge was not supported by any testimony presented at trial and had the prejudicial effect of "emasculating" his entrapment defense. Brief of Appellant at 37.

■ ¶ 9 The defense of entrapment, as defined in the Commonwealth of Pennsylvania, is based upon an objective standard intended to deter overreaching on the part of law enforcement and those individuals acting in cooperation with law enforcement, such as confidential informants. However, the government may only be held accountable for the acts of a third

party if those acts were taken at the request or direction of law enforcement. *See Commonwealth v. Lindenmuth*, 381 Pa.Super. 398, 554 A.2d 62, 65–66 (1989); *Commonwealth v. Manley*, 252 Pa.Super. 77, 380 A.2d 1290, 1294 (1977).

¶ 10 In this case, the crux of Willis' defense is the alleged conduct of Howard "Wing Ding" Jones, a lifelong friend of Willis' who was, at the time, in federal custody and attempting to secure leniency by providing information to the authorities. According to Willis, "Wing Ding" repeatedly pressured him to engage in the sale of illegal narcotics to another informant named "Pockets." Willis testified that "Wing Ding" called him from prison 25 to 30 times between January 11 and March 22, 2006. N.T., 7/9/08, at 147. Willis testified that he only acceded to his old friend's request because he believed "Wing Ding" was prone to violence, even from behind prison walls, and thus feared for the safety of his wife and family if he did not cooperate. N.T., 7/9/08, at 143–44. Willis argues that "Wing Ding" engaged in this harassing behavior in his capacity as a government informant; that the authorities knew or should have known about the allegedly harassing phone calls, yet did nothing to stop them; and, as a result, the conduct must be attributed to the government.

¶ 11 In contrast to Willis' version of events, the Commonwealth presented the testimony of Police Officer Joseph Ferdman, who at the time of these events was a Philadelphia Housing Police Officer on loan to the Drug Enforcement Agency. Officer Ferdman testified that he was in the room at the time "Wing Ding" made his proffer to the federal authorities. N.T., 7/8/08, at 34–36. He stated that "Wing Ding" called Willis at the behest of the authorities to set in motion the transaction between Willis and "Pockets." *Id.*

He also testified that, as an investigator assigned to the case, he would have been aware of any phone calls made by "Wing Ding" in connection with the investigation and that, to his knowledge, only one call was made. *Id.*, at 36.

¶ 12 The conflicting testimony regarding the number of calls made by "Wing Ding" at the behest or acquiescence of the government created a genuine issue of fact for the jury. The standard jury instructions do not contain a specific instruction regarding the responsibility of law enforcement for actions of cooperators taken independent of the direction or control of authorities. *See* Pa. SSJI § 8.313. Accordingly, the trial court crafted its own instruction reflecting its understanding of the applicable law, namely *Lindenmuth* and *Manley, supra.* Trial Court Opinion, 11/14/08, at 5.

■ ¶ 13 The nature of a court's instructions to the jury is "within the discretion of the court, so long as the court accurately instructs the jury on the appropriate legal principles involved." *Commonwealth v. Kim*, 888 A.2d 847, 852 (Pa.Super.2005) (quoting *Commonwealth v. Hartey*, 424 Pa.Super. 29, 621 A.2d 1023, 1028 (1993)). This Court's main concern is "that the charge clearly, adequately, and accurately presents the law to the jury for its consideration." *Id.* (quoting *Commonwealth v. Collins*, 810 A.2d 698, 701 (Pa.Super.2002)). The jury charge must be reviewed "not in isolated portions but as a whole to ascertain whether it fairly conveys the required legal principles at issue." *Commonwealth v. McClendon*, 874 A.2d 1223, 1232 (Pa.Super.2005).

¶ 14 After a thorough review of the trial court's entire jury charge, this Court is satisfied that the jury was provided with a comprehensive and accurate presentation of the law as it applied to this case. The specific portion of the charge complained

of by Willis was entirely appropriate given the key issue in this case, which was whether law enforcement was responsible for the alleged conduct of "Wing Ding."

¶ 15 Judgment of sentence affirmed.